ANTOINETTE L. JOSLIN *vs.* EMORY W. GODDARD & another.

Worcester.   November 10, 1904. — January 4, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Equity Pleading and Practice*, Master's report.  *Deed*, Delivery.

A finding of fact by a master in a suit in equity, confirmed by an order of the court to which his report was made, will not be reversed unless the reported evidence clearly shows it to be wrong. In this case two deeds made by an aged woman and placed by her direction in the hands of one of her sons who was her confidential man of business, and who also was one of the grantees, were found by the master, on the facts as reported by him, to be void for want of delivery, and this finding, confirmed by the Superior Court, was not disturbed by this court.

BILL IN EQUITY, filed February 3, 1902, by a daughter of Mary A. Goddard, late of Webster, against two brothers of the plaintiff, sons of Mary A. Goddard, to set aside two deeds of real estate executed by Mary A. Goddard which are described in the opinion, praying also for an accounting.

In the Superior Court the case was referred to Charles A. Merrill, Esquire, as master. He made a report in favor of the plaintiff on the ground stated in the opinion. The report was confirmed by a decree of the Superior Court granting the relief prayed for; and the defendants appealed.

*C. Haggerty & J. R. Kane*, for the defendants.

*J. S. Gould*, for the plaintiff.

BARKER, J. The plaintiff and the two defendants are the only children and heirs of Mary A. Goddard who died intestate on December 19, 1899, at the age of nearly eighty-three years,

having been a widow for many years. In the present position of the action the turning point is as to the validity of two deeds executed by her on June 6, 1896. One of these deeds purported to quitclaim to the defendants all the grantor's right, title and interest after her death, in certain land in trust to pay over the net income to the plaintiff during her life and upon her death to turn over the land to themselves free of trust. The 'other deed quitclaimed to the defendants certain other lands reserving and excepting to the grantor during her natural life the use, occupation, income, enjoyment and control of the lands quitclaimed. The lands described in the two deeds constituted all of the grantor's real estate. The bill asks to have them declared void, and for an accounting of the rents and profits of the lands for the time which has elapsed since the grantor's death, upon the ground that the plaintiff and the defendants are tenants in common as the heirs at law of the grantor. Certain allegations as to personalty alleged to have been owned by Mrs. Goddard at the time of her decease have in the course of the proceedings become immaterial to our decision.

After issue joined the cause was sent by the Superior Court to a master to find the facts and state the account and make report thereof together with so much of the evidence as either party might request. Upon the coming in of the master's report it was recommitted, and a supplementary report was made to which the defendants filed exceptions which were overruled and a final decree was entered for the plaintiff. The cause is here upon the defendants' appeal from the order overruling their exceptions to the supplementary report of the master and from the final decree, and it has been considered upon the briefs submitted by the parties. The defendants' brief raises no questions except those as to the validity of the deeds of June 6, 1896, and we treat all others as waived.

The decree declares that the two deeds are void because there was no delivery of the same in the lifetime of the grantor, and for other reasons which in the view we hold are now immaterial. As all the evidence is before us upon the master's report we have examined it with care to see whether the declaration that the deeds are void for want of delivery shall stand.

At the time of their execution Mrs. Goddard was living in the same house with the two defendants, and this house was in the same yard with their business office. One of the defendants had a wife and children and occupied the upper tenement, while Mrs. Goddard and the other defendant who was unmarried occupied the lower tenement of the house. Since her husband's death the married son had been her confidential man of business, and had the custody of her papers. The two deeds were drafted by an attorney in pursuance of oral instructions given to him by Mrs. Goddard at her home. They were executed by her there when she and the attorney were alone together. They then were taken by the attorney and carried to the defendants' office where they were handed to Emory Goddard, the son who acted as the grantor's man of business and who had the custody of her papers, the attorney saying to Emory that his mother told him to give them to him. The attorney was examined as a witness, and testified " I asked her what I should do with it. She told me to give it to Emory Goddard. He would know what to do with it," and upon cross-examination, " She told me what to do with them after they were executed. She told me to give them to Emory."

Standing by itself this evidence would justify a finding that there was a delivery of the deeds, and if the master had so found upon all the evidence we have no doubt that his finding would have been allowed to stand. But the master has found that the deeds were held by Emory subject to Mrs. Goddard's control, revocation and alteration while she lived, and that he was merely the custodian thereof for his mother and that he so understood it, and the defendants' exception to the finding has been overruled by the Superior Court, and a decree entered declaring that there was no delivery. The finding of the master who saw and heard the witnesses, confirmed by the order of the court to which he made his report, will not be reversed here unless our examination of the reported evidence shows us that the finding is clearly wrong. *Holt* v. *Silver*, 169 Mass. 435.

In support of the master's finding, besides the fact that Emory was Mrs. Goddard's man of business having the custody for her of all her papers, the evidence shows that neither deed was

recorded until some time after Mrs. Goddard's death; that the other grantee had no knowledge of either deed until after the grantor's death; that after their execution Mrs. Goddard spoke on more than one occasion in a way which would justify the inference that she supposed that in making the deeds she had made her will and that she could change it, and that Emory himself told her that the deeds were in his safe and that if she should ever conclude to change her mind they were not on record and she could fix them as she pleased. Upon this state of the evidence we are not inclined to set aside the master's finding or that part of the final decree which declares the deeds void for want of delivery.

We do not consider whether they are void for other reasons also

*Decree affirmed.*