FRED J. TABER vs. CHARLES H. BRECK, executor, & others.
SAME vs. SAME.

Suffolk.    March 23, 26, 1906. — June 20, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Equity Pleading and Practice*, Master's report, Hearing before master, Election of
remedy.    *Equity Jurisdiction.    Partnership.    Election.    Contract*, Implied:
common counts.

Where in a suit in equity the case is referred to a master under an order of court
which does not require a report of the evidence but only of such facts and ques-
tions of law as either party may request, and the master makes a full report
setting forth the facts on which his rulings of law are based, he is not obliged to
report the evidence on which his conclusions of fact were reached.

Where a master is not required to report the evidence on which his findings of fact
are based and does not report it, a finding by him that certain oral contracts
alleged by the plaintiff were not proved is final.

Where in a suit in equity a master is not required by the order of reference to
report the evidence on which his findings of fact are based and does not report
it, a finding by him, upon a claim by the plaintiff for compensation for services
alleged to have been rendered by the plaintiff to a firm of which he had been a
member, that the plaintiff after a certain date was acting as a member of the
firm and not as an employee and that his employment had ceased at a previous
date, is final.

Where a member of a business partnership organized in the form of a trust with
transferable shares, who also is employed by the partnership at a salary, has
made an agreement in writing with a copartner that whenever he leaves the
employ of the company he will sell and convey his shares to his copartner at a
certain price which the copartner agrees to pay, and subsequently gives a notice
in writing under the contract that his employment has ceased, offers to transfer
his shares, demands a settlement, and about two years afterwards brings a suit
in equity to enforce the contract specifically and compel the payment to him of
the agreed price for his shares, he cannot also maintain another suit in equity
against his copartners or their representatives for an accounting for the profits
accruing from his shares after the date on which he offered them to his copart-
ner under the contract which he is seeking to enforce specifically.

Where a member of a business partnership organized in the form of a trust with
transferable shares, who also is employed by the partnership at a salary, has
made an agreement in writing with a copartner that whenever he leaves the
employ of the company he will sell and convey his shares to his copartner at a
certain price which the copartner agrees to pay, and subsequently gives a notice
in writing under the contract that his employment has ceased, offers to transfer
his shares and demands a settlement, but, instead of acually severing his con-
nection with the company after giving his notice, continues to render services
which are of value to the company and are performed with the knowledge of the
representatives of his copartners and without any dissent from them, until they

finally discharge him, when he brings a suit in equity to enforce the contract specifically and compel the payment to him of the agreed price for his shares, he is entitled in another suit in equity to recover from the members of the partnership the reasonable value of his services from the time of his giving the notice to the time of his discharge.

When by an order of court in a suit in equity the case has been recommitted to a master to report further on certain points named in the order, a motion that the whole case be reopened for the introduction of further evidence must be addressed to the court and not to the master, and the denial of such a motion by the master is not a matter of exception to his report.

TWO BILLS IN EQUITY, filed in the Superior Court respectively on March 31 and April 17, 1903, both by Fred J. Taber of Boston against Charles H. Breck, as executor under the will of Luther Adams, late of Newton, and also as principal trustee and shareholder in a partnership organized under a declaration of trust and carrying on a wholesale liquor business under the name of Adams, Taylor and Company,* and Clarence A. Barney, a shareholder in the same partnership, the first bill praying (1) that an account might be taken between the plaintiff, as a former shareholder in the partnership, and the defendants in accordance with alleged agreements of Adams set forth in exhibits annexed to the bill, (2) that the defendant Breck as executor might be ordered specifically to perform these agreements, (3) that there might be an assessment of damages caused by the defendant Breck's failure to perform the agreements, (4) that the defendant Breck as executor might be enjoined from selling, transferring or bringing any action at law or suit in equity upon a certain promissory note of the plaintiff dated January 1, 1900, and (5) for further relief ; and the second bill praying, (1) for an account of the business done and profits earned by the partnership of Adams, Taylor and Company from December 31, 1897, to March 21, 1903, (2) that any salary due to the plaintiff for services and the fair value of services rendered by him to Adams, Taylor and Company might be ascertained by a jury and the defendants as such partnership be ordered to pay the same, and (3) for further relief.

The cases were referred to James D. Colt, Esquire, as master, who filed a report.    Later the cases came before *Fox*, J. upon a motion of the plaintiff that the master be ordered to report cer-

---

* See 183 Mass. 133.

tain exceptions, findings and evidence. The judge ordered that the cases be recommitted to the master for the purposes named below, and made the following memorandum of decision:

"1. The plaintiff requested the master to report his exceptions to the admission and exclusion of evidence. The master says that there are more than one hundred such exceptions scattered through eighteen printed volumes, and that to do as requested would necessitate reporting all the evidence. The plaintiff has not specified, either before the master or before the court, the particular exceptions on which he relies, nor shown that any of them are material in view of the facts found. While it may be true that the master's rulings on evidence are subject to review by the court, it is not the master's duty to prepare and report a bill of one hundred exceptions without aid from counsel.

"2. The plaintiff filed one hundred and twenty-one objections to the master's report, and in an argument before me, which continued for more than four hours, his counsel claimed and exercised the right of reading the testimony at length for the purpose of showing that it did not justify the master's findings. I am not satisfied that it is necessary to report the evidence for the purpose of raising any legal question, or for the purpose of saving any of the plaintiff's legal rights. The rule to the master requiring him to report such facts and questions of law as either party may request does not require him to report immaterial facts and mere moot questions. The rule also provides that the master is not to report the evidence without a special order of the court. It is not open to counsel, under the guise of saving his law, to convert a matter of discretion into a matter of legal right.

"3. Suit No. 1312 is a suit by Taber against Breck as executor of the will of Adams, to compel specific performance of certain written agreements under which Adams agreed to repurchase from Taber certain shares of stock in the firm of Adams, Taylor and Company whenever Taber should leave their employ.

"Suit No. 1349 is a suit by Taber against Adams, Taylor and Company to recover compensation for his services while in their employ.

"The principal questions in controversy are apparently these:

"First, Whether there were any oral agreements between the

parties enlarging the rights which the plaintiff had under his written agreements.

" The master has found against the plaintiff's contentions, and has found that the plaintiff's testimony upon this matter is not to be believed. It is clear that the questions raised under this head are merely questions of fact.

" Second, The question of the proper construction of the written agreements.

" All questions of construction are saved by the master's report.

" Third, The question when the plaintiff left the employ of Adams, Taylor and Company.

" This question is important on two grounds. It fixes the time when he had the right to demand the repurchase of his shares, and it fixes the term of his employment. May 16, 1901, the plaintiff·wrote a letter to Breck, executor of Adams, saying that he had ' this day left the employ of Adams, Taylor and Company,' and demanding that Breck repurchase the shares according to the terms of the written agreements. Under these agreements Taber had the right to leave at any time, and the master was clearly justified in finding that for the purpose of fixing his rights under those agreements and the time when the value of his shares should be determined Taber had left the employ of Adams, Taylor and Company on May 16, 1901.

" The master finds, however, that ' Taber remained at the office of Adams, Taylor and Company, notwithstanding his letter of May 16, 1901, until he finally left March 27, 1903, and acting with Barney carried on the business of the company down to the time when Breck was elected as principal trustee.'

" If this is so it is difficult to see why Taber is not entitled in his suit against the firm to some compensation for those services.

" It appears also, and is agreed, that certain items which appear in the accounts stated by the master as charged to Breck, as executor of Adams, should more properly be charged against the firm of Adams, Taylor and Company. These are the claims of ' salary ' and ' balance appearing on books to the credit of Taber.' As the plaintiff insists upon this correction the report should be recommitted in order that the master may make the necessary correction. The report accordingly is to be recom-

mitted to the master for these purposes only: to report the fair value of the services of Taber to Adams, Taylor and Company between May 16, 1901, and March 27, 1903; and whether there was any express or implied agreement between the parties as to compensation for the services so rendered ; and to correct the accounts as stated by the master by charging the items of 'salary' and 'balance appearing on the books to the credit of Taber' to the firm of Adams, Taylor and Company in suit 1349, with leave to reopen the case for additional testimony or not, in his discretion, upon the matters above stated.

" As to all other matters the plaintiff's motion is denied."

The judge made an interlocutory decree in accordance with this memorandum of decision ; and the plaintiff appealed.

Under the interlocutory decree the master made a supplementary report including the following findings :

" I find that the fair value of Taber's services from May 16, 1901, to March 27, 1903, was $7,500. If, in view of all the findings in my original report, he is entitled to recover anything for services during this period, he would be entitled to recover from Adams, Taylor and Company, $7,500 with interest to be computed at six per centum from March 27, 1903.

"I find that there was no agreement between the parties as to compensation for services rendered during the period in question."

He found also that the plaintiff was entitled to recover from the defendant Breck as executor, after deducting the amount of the plaintiff's note with interest, the sum of $46,015.74, and was entitled to recover from the firm of Adams, Taylor and Company the amount of $11,403.83. He also made an alternative finding under which the plaintiff would be entitled to recover from the defendant Breck as executor, after deducting the amount of the plaintiff's note with interest, the sum of $61,683.12 and from the firm of Adams, Taylor and Company the sum of $15,723.23.

The plaintiff made a motion before the master to reopen the case for additional testimony. The master denied the motion.

The plaintiff filed exceptions to the master's supplementary report, and thereafter the case was heard by *Richardson*, J. He made a decree overruling the exceptions to the master's report

and to his supplementary report and confirming both reports. The plaintiff appealed.

Later that judge made final decrees as follows:

In the first suit (No. 1312), that the agreements dated December 31, 1897, February 1, 1899, and January 1, 1900, be specifically performed and carried into execution, as of May 16, 1901 (and for ease in computation May 31, 1901), and that the defendant Charles H. Breck, as executor of the will of Luther Adams, deliver to the plaintiff as satisfied and paid in full, the promissory note dated January 1, 1900, in the amount of $20,000, bearing interest at the rate of five per cent per annum made by the plaintiff to the order of Adams; and that said defendant pay to the plaintiff the sum of $46,370.80 and interest thereon from February 1, 1906, also with interest from May 31, 1901, to February 1, 1906, and that upon payment of this sum the plaintiff transfer by proper instrument of transfer and deliver to the defendant Breck, as executor, the shares specified in the agreements; and that the plaintiff recover against the defendant Breck and the defendant Barney his costs of suit taxed in the sum of $29.83.

In the second suit (No. 1349), that the defendants, Breck, as executor of the will of Luther Adams, and Mary A. Barney, as executrix of the will of Clarence A. Barney, as copartners doing business under the firm name of Adams, Taylor and Company, pay to the plaintiff or his legal representatives $11,522.45, founded upon the master's findings of May 16, 1901, with interest thereon to February 1, 1906, and additional interest from February 1, 1906.

The plaintiff appealed from both decrees.

*J. C. Ivy,* (*C. S. Ensign, Jr.* with him,) for the plaintiff.

*J. Lowell & J. A. Lowell,* for the defendants.

BRALEY, J.   These cases were referred to a master under decretal orders which did not require a report of the evidence, but only such facts and questions of law as either party might request.   Under this form of reference he declined to report the testimony in detail, and as the report is full and sets forth the facts on which his rulings of law were based, he was not obliged to submit the evidence on which these conclusions were reached. *Parker* v. *Nickerson,* 137 Mass. 487, 493.   *Sawyer* v. *Common-*

*wealth,* 185 Mass. 356, 359. In all the plaintiff alleged one hundred and twenty-one exceptions to the original and supplementary reports, and, although his brief presents many of them in groups and others by single instances, yet generally they may be correctly classified as relating either to the rights of the parties under the agreements and the declaration of trust as modified, or to adverse findings of fact made upon conflicting evidence. Upon a full consideration of these exceptions no reversible error is found except in one particular, to which full reference later will be made.

The partnership, of which the plaintiff and the decedents comprised all of the members, was a joint stock enterprise with transferable shares, organized under a declaration of trust. Originally it was provided that the death of a member should not work a dissolution of the firm, but that those who then became lawfully entitled as owners should succeed to all the rights in the certificate held by the deceased member. At the expiration by limitation of the first partnership it was extended for a further period, which had not expired at the time of the testator's death. This agreement of extension or renewal essentially modified the declaration of trust by providing that upon the death of either of the trustees, who then were Adams and Barney, at the election of any stockholder the partnership should be terminated and the assets distributed among the beneficiaries in proportion to their holdings. If the form of the association was intended to give to the partnership the attributes of a corporation without taking organized corporate form, while the liability to creditors for partnership debts would not be changed, as between themselves any right to contribution would be ascertained according to the shares held by each, and upon death distributees or legatees would succeed to the title and interest of the deceased partner in such share or shares, the value of which might be ascertained by an appraisal, but there would be no division or distribution of the assets as such, for the firm would continue as before. *Tyrrell* v. *Washburn,* 6 Allen, 466. *Gleason* v. *McKay,* 134 Mass. 419, 425. *Phillips* v. *Blatchford,* 137 Mass. 510, 515. *Breck* v. *Barney,* 183 Mass. 133. 2 Lindl. Part. (2d Am. ed.) 762. A bill in equity, however, would lie by the plaintiff if necessary to compel an accounting and the

payment of dividends, if the trustee in the exercise of a sound discretion had refused or failed to divide accrued net profits. *Phillips* v. *Blatchford, ubi supra. Howe* v. *Morse,* 174 Mass. 491.

Whatever the plaintiff's rights as a partner may have been on the death of Adams to demand an adjustment on the basis of a dissolution and final distribution according to the proprietary interest of the members, he has not chosen to exercise this option, but seeks by the first bill specific performance of the several contracts, and by the second that an account of profits may be taken for the purpose of establishing the value of his services, which he alleges were rendered, not only under the written agreements, but also under certain additional oral contracts made with Adams, and after his death with Barney, who, as associate trustee, had succeeded to the authority of the principal trustee with a corresponding right to make such contracts in behalf of the firm. The evidence on the question not being reported, the master's finding that none of these oral contracts were proved is final. *Freeland* v. *Wright,* 154 Mass. 492. *Joslin* v. *Goddard,* 187 Mass. 165. In the beginning the defendant Breck's testator, Adams, was the owner of a controlling interest in the company and so continued until his death, when out of the entire capital of three thousand shares he possessed seventeen hundred and fifty, and of the remaining twelve hundred and fifty the plaintiff owned five hundred shares, while Barney, the third partner, held seven hundred and fifty shares. *Breck* v. *Barney, ubi supra.* This preponderating interest permitted him as principal trustee under the terms of the trust substantially to manage the affairs of the company as he deemed expedient, and all of the stock owned by the plaintiff had been sold to him from time to time by Adams according to the terms of the agreements.

The plaintiff's right to specific performance and to an accounting is thus left on these agreements, and the first question of importance is, when within the meaning of the contracts did he leave the employment of the firm, as that date determines the time when his shares were to be valued and his right to salary ended. Each contract contains a clause that the plaintiff should be considered as the absolute owner " subject only,

as between the parties hereto, to the agreements hereinafter mentioned." An important fact to be remembered is that they are not executed by the company, but only by Adams, whose obligation to repurchase the shares was his personal undertaking. For the purposes of determining the excess in price beyond the par value, a full examination of the books of the partnership was required, as well as for the purpose of ascertaining the amount of unpaid dividends or dividends which had accrued but had not been declared, and a possible embarassment is removed by the master's finding that the surplus shown by the partnership books is to be treated as "dividends accrued but not declared," from which it follows that the shares never have exceeded in value for each year the maximum price at which they were to be repurchased. In his bill for specific performance the plaintiff alleges that he left the employment of the firm "after January 1, 1901," without naming any definite time, but the master finds that on May 16, 1901, in compliance with the agreements he gave a notice in writing to the executor that as this employment had ceased he was ready to transfer the shares, and demanded a settlement. While it is manifest from the report that the plaintiff in fact continued at the company's place of business acting with Barney in the management of its mercantile affairs until he was discharged the last of March, 1903, by the executor who had been elected principal trustee, and that on the twenty-seventh of that month he again demanded a settlement and repurchase of the shares, yet the master's finding, that the plaintiff's presence after May 16 was not as an employee, but as a member of the firm, and that he actually ceased to be employed by the company after the first date, is not reviewable as the evidence has not been reported. *East Tennessee Land Co.* v. *Leeson,* 183 Mass. 37, 38. *Crane* v. *Brooks,* 189 Mass. 228. *O'Brien* v. *Murphy,* 189 Mass. 353. Apart from this finding, however, the plaintiff is not shown to have acted under any mistake of fact, as the correspondence and negotiations between him and the executor make it plain that having taken this position he did not withdraw his demand or suggest any other date of adjustment as being either preferable, or more equitable. The executor at the plaintiff's request having treated the date selected as the time when performance was

enforceable proceeded to arrange for a settlement by a sale of the company's property, and to permit the plaintiff subsequently to shift his position by moving forward the date for an account-ing which might result in an additional payment to him there-fore would be inequitable and unjust. *Raphael* v. *Reinstein,* 154 Mass. 178, 179. See *Miller* v. *Hyde,* 161 Mass. 472, 482, and cases cited.

If this date is accepted as the time of adjustment, the amount to be paid is to be determined by the fourth clause of each agreement.\* These clauses, except as to dates, in this particu-lar are synonymous, and by their terms to the par value of the shares is to be added the plaintiff's one sixth part of the net profits, which may be represented by surplus assets considered as dividends accrued but not declared. This method was adopted by the master, who took the financial standing of the company as shown by its books upon the date named by the plaintiff as the true criterion for the ascertainment of assets in whatever form they appeared. Instead of ascertaining the net assets by charging off uncollectible debts carried on the books at their face value, but which if taken at their actual value would have left little above the par value of the shares, he allowed the plaintiff the full amount, and there is no sufficient reason shown

---

\* In the agreement of December 31, 1897, the fourth clause or paragraph was as follows :

"Fourth. Whenever, after one year from date, said Taber shall leave said employ, he agrees for himself and his legal representatives to sell and convey to said Adams, or his legal representatives, and said Adams, for him-self and his legal representatives, agrees to purchase said shares of stock at the price of one hundred dollars per share and in addition thereto the value of such shares in excess of one hundred dollars per share, as shown by the books of said company, but the value of said shares in excess of one hundred dollars per share shall not exceed the rate of ten dollars per share per year, and the value of said shares as shown by the books of said company shall be deemed and taken to be one hundred dollars per share on January 1st, 1899, and all unpaid dividends, or dividends accrued but not declared, shall also be paid to said Taber, said sale to be for cash."

In the contract of February 1, 1899, the fourth clause or paragraph was in substantially the same language, with unimportant differences in punc-tuation, except that the date "January 1st, 1899," on which the value of the shares was to be taken to be one hundred dollars per share was changed to "January 1, 1900."

in the numerous exceptions to this part of the report why the result reached, and which was sufficiently favorable to the plaintiff, should be modified or reversed.

The plaintiff's exceptions so far as they are found to relate to the second case rest on a misconception by the plaintiff of the nature of his remedy. Having made an election for specific performance without a dissolution of the firm, he cannot treat the partnership as dissolved and demand an accounting on that basis, for the company continued under the declaration of trust unaffected by the modification though one member had died, and when the plaintiff sold his shares he sold his interest in the property, however designated, and the purchaser thereby became entitled to what he had purchased. Between the parties this transfer became absolutely effective May 16, 1901, and thereafter the shares and profits by way of undeclared dividends attaching to them became vested in the executor, who stood in the testator's place. *Phillips* v. *Blatchford, ubi supra.* See *Kingman* v. *Spurr*, 7 Pick. 235. What the plaintiff in effect attempted to maintain before the master, and now endeavors to maintain under his exceptions, is, that for the purpose of enforcing the agreements the partnership is a joint stock company, and when a member has been paid for his shares, which carry with them accrued but undeclared dividends, they belong to the transferee, but that after such a sale and transfer has been made the former shareholder can maintain a bill in equity against the partnership, which then includes the new member, for an accounting of these profits. The answer is obvious: the plaintiff is no longer a member of the firm, having unreservedly parted with all his title and interest in the company when he sold his shares with their accumulations.

If the principal object for which the bill was brought failed when the master found that the alleged oral contracts were not proved, or that it could not be maintained for a partnership accounting except to recover arrears of salary and dividends declared and placed to his credit but not paid, further relief may be granted for the purpose of compensating the plaintiff for any service he may have rendered and for which the partnership was liable. It is undisputed that he did not actually sever his connection with the business management of the com-

pany until he was discharged on March 27, 1903, and the master in his supplementary report finds that during the period from May 16, 1901, to this date, his services were beneficial, and estimates their value at $7,500, and the evidence on this issue not being reported this finding is conclusive. But as the plaintiff's connection with the company had not been discontinued while the negotiations were in progress there would seem to be no sufficient reason why independently of the agreements he is not entitled to reasonable remuneration in some form, although disallowed by the master, especially as his services which were valuable were performed with the knowledge and without any dissent by the executor, and with the knowledge and assent of the associate trustee, who during the time properly represented the company. See *Schenkl* v. *Dana*, 118 Mass. 236; *Jepson* v. *Killian*, 151 Mass. 593; *Fitzgerald* v. *Allen*, 128 Mass. 232, 234.

The motion of the plaintiff at the hearing before the master under the order of recommittal that the whole case be reopened for the introduction of further evidence under the second bill was irregular as it should have been addressed to the court, and his refusal to grant this request is not a matter of exception. 2 Dan. Ch. Pl. & Pr. (5th ed.) 1221, note 2. And as all the remaining exceptions to the supplementary report of the master depend upon a different view of the testimony than that taken by him they must be overruled.

The thirty-sixth exception to the original report, that the " account and findings, and several items therein, are less than is required by law, equity, the evidence, and weight of the evidence " therefore must be sustained. For the purpose of allowing the sum named above the final decree under the second bill must be reversed so that the account may be reformed by the addition of $7,500 with interest, but the final decree under the first bill is affirmed for reasons already stated. Appeals also having been taken from the interlocutory decrees it is enough to say that the first decree granting a limited recommittal protected the plaintiff's rights at the only point where the master is found to have erred, while the second decree overruling his exceptions under the first bill and confirming the report should be affirmed as no error is shown, although upon the second bill the decree

must be modified to the extent of allowing the exception to the refusal to award reasonable compensation for the period named.

*Ordered accordingly.*