BENJAMIN P. CHENEY *vs.* FRED J. TABER & others.

Suffolk. March 24, 1915. — May 22, 1915.

Present: RUGG, C. J., LORING, BRALEY, & CARROLL, JJ.

*Contract,* What constitutes. *Equity Jurisdiction,* To enforce return of property entrusted to defendant conditionally.

Where one, who is desirous of purchasing from several owners certain shares of stock in a corporation and other personal property, which have been offered to him for cash, procures a modification of the terms of sale so that notes will be accepted in part payment and then procures acceptable notes from one who is to share in the enterprise and who sends the notes to him with a letter stating "I understand that these notes are to be substituted for part of the cash consideration paid to the vendors . . . and that, of course, in the event of the deal not being completed the notes will be returned on demand;" and where the vendors receive the notes and read the foregoing letter and then the transaction is not completed because of a failure to pay the balance of the purchase price in cash and the vendors do not deliver any of the shares of stock or other property, the maker of the notes is entitled to have them returned to him by the vendors, who are not holders in due course, and may enforce that right by a suit in equity.

BILL IN EQUITY, filed on July 20, 1914, against Fred J. Taber, Harry L. Bagley, William F. Cox and Fred A. Wineke, alleging that the plaintiff delivered to the defendant Cox, with the following letter, the four notes therein described:

"The Biltmore, New York,
April 22, 1914.

"Mr. William F. Cox,
115 Broadway,
New York, N.Y.

"Dear Sir: Mr. Carlisle has outlined to me the details of the 'Mount Vernon' whiskey deal, in which I participate with him in his share of the profits, and I am enclosing herewith the following notes for use in connection therewith, as stated below:

"Two notes of $15,000 each, six months from April 10th.

"Two notes of $10,000 each, six months from April 10th.

"I understand that these notes are to be substituted for part of the cash consideration paid to the vendors, thereby realizing $50,000 against the same, and that, of course, in the event of the deal not being completed the notes will be returned on demand.

"At your convenience I would be glad to have a letter showing the transaction in detail and how and where the notes are being used.

Very truly yours,

Benjamin P. Cheney."

The bill further alleged that Cox delivered the notes to the other defendants, exhibiting to them the plaintiff's letter; that the defendants had not completed the transaction, but that they refused to redeliver the notes. The prayers were for injunctions restraining the defendants from transferring the notes and for a decree directing their delivery to the plaintiff.

The case was heard by *Pierce*, J., a commissioner having been appointed to take the evidence. The judge filed the following memorandum of his findings:

"1. I find that on and before April 22, 1914, the day when the letter accompanying the notes was delivered by Carlisle, acting in this regard for the plaintiff, Cheney, the only 'deal' contemplated by Carlisle or Cox or any of the defendants required, as a condition of passing of title, an actual cash consideration; and that Cheney did not authorize the use of his notes for any purpose other than in 'substitution' of a part of the actually paid in, or to be paid in, cash consideration. While it might be possible to treat a draft, if paid within the usual commercial period, as a

cash payment, the mere drawing and acceptance of a draft is not such.

"2. I find that in this case Cheney did not authorize any contractual method by means of which the obligation of the parties should stand as and for a cash consideration, or in any manner waive the terms of the letter. It follows that no one was authorized to deliver Cheney's notes to the end that they stand as his legal obligation.

"3. The several defendants are to be ordered to deliver to the plaintiff, within twenty days from the entry of this decree, the four several notes described in the bill with costs."

The other material facts are stated in the opinion.

A decree was made in accordance with the memorandum; and the defendants Taber and Bagley appealed.

*A. Black & C. F. Eldredge,* for the defendants Taber and Bagley.

*S. M. Child,* for the plaintiff.

BRALEY, J. The defendants admit that they either knew of the contents or had read the plaintiff's letter under which Cox had been authorized to act as his agent, and no general or discretionary powers having been given they never became holders in due course, unless the plaintiff's promissory notes, entrusted to him, were delivered in accordance with the instructions. R. L. c. 73, § 69. *Fillebrown* v. *Hayward,* 190 Mass. 472. *Allen* v. *Puritan Trust Co.* 211 Mass. 409, 422. *Record* v. *Littlefield,* 218 Mass. 483.

It appears that Taber and Wineke, to whom we shall refer as the defendants, were the owners of a majority of the common stock of the Mt. Vernon Distilling Company, as well as of certificates representing a large number of barrels of its whiskey held in bond, and Cox, who was seeking to acquire, this property, solicited one Carlisle to interview the plaintiff and procure the notes in aid of the purchase upon the understanding that the plaintiff should participate in the expected profits.

The negotiations which followed resulted in an option of purchase under which the defendants were to receive the selling price in cash, but they finally agreed with Cox to accept the notes in part payment. While the notes were handed over and immediately divided between the defendants, the remainder of

the consideration was never paid, as the draft therefor subsequently given by Cox to Taber was dishonored, and neither the stock nor the certificates have been transferred.

It is manifest that, the payment of the balance having been a condition for the transfer of title, the transaction never has been consummated. *Scudder* v. *Bradbury,* 106 Mass. 422, 427. *Haskins* v. *Warren,* 115 Mass. 514, 533.

The defendants in their answers disclaim any purpose to take advantage of the expiration of the option and assert that a binding contract having been made, which has been broken by the purchaser, the notes are enforceable.

We are now prepared to consider the application of the letter to these transactions, concerning which the plaintiff is not shown to have had any knowledge until informed of the fruitless result, and that the notes though he demanded their return were in the possession or control of the defendants, who claimed them as part of the consideration for the sale.

Their number and tenor having been fully described, authority to use them is found in the words, "I understand that these notes are to be substituted for part of the cash consideration paid to the vendors, thereby realizing $50,000 against the same, and that, of course, in the event of the deal not being completed the notes will be returned on demand." To the request which followed, "At your convenience I would be glad to have a letter showing the transaction in detail and how and where the notes are being used," no reply was ever vouchsafed by either Cox or the defendants or any information whatever furnished.

If the defendants' construction of the letter is adopted, that Cox was empowered to substitute the notes at their face value "for part of the cash consideration," it cannot be contended successfully that the plaintiff also intended to part with his money unless the vendors passed the title.

Nor have the defendants pointed out from what source "his share of the profits" could come, if they are entitled to retain the stock and the bonded whiskey and collect the notes. The plaintiff, when he said, "in the event of the deal not being completed," did not mean the entering into by the parties of an executory contract, but of a sale by which title to the property would be acquired. It is certain that he did not intend to invest unless the

balance of the consideration was obtained and concurrently paid over. If this was done, then and not until then could the notes be used and treated as partial payment.

The defendant Bagley is the broker employed by Taber and Wineke to whom, when the notes were divided, they each delivered one note for $10,000 in payment for services; and his testimony shows that having sold one he retained the other note.

The defendant Taber also testified that shortly after obtaining it he disposed of the note for $15,000, while Wineke, who has not appealed, holds the remaining note for a like amount.

But the credibility of the witnesses was for the presiding judge. *Taber* v. *Breck*, 192 Mass. 355. And there is no positive evidence that any of these notes had passed irrevocably beyond the control of the respective appellants. If their defence is not sustained, they moreover have not questioned the form of the decree which ordered the defendants to return the notes to the plaintiff within a specified time. *Fuller* v. *Percival*, 126 Mass. 381, 382, 383. It is therefore affirmed with costs.

*Ordered accordingly.*