CHARLES H. BRECK, executor, *vs.* CLARENCE A. BARNEY, trustee.

Suffolk.　December 8, 1902. — March 10, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & LORING, JJ.

*Payment,* In cash.　*Equity Pleading and Practice,* Decree.

Where each of two persons owes the other a like amount and both debts are absolutely and immediately due, if the two.agree together that the debts shall offset each other and that both are paid, this is a payment in cash for all purposes.

In affirming a decree for a plaintiff which finally disposed of all questions raised by the pleadings, the court ordered words, giving the plaintiff leave to apply for such further orders as might be necessary, to be stricken from the decree affirmed.

LORING, J.　This is a bill in equity brought by the executor of the will of Luther Adams against one Clarence A. Barney, to compel the defendant as principal trustee under a declaration of trust to issue to the plaintiff as executor a certificate for one thousand seven hundred and fifty shares, for which the testator held a certificate at the time of his death.　No objection was made at the argument before us to the transfer of seven hundred and fifty of the seventeen hundred and fifty shares, but the defendant contended that he should not be directed to make the transfer of the one thousand shares.　The ground on which he refused to make a transfer of the one thousand shares was that they never had been paid for in cash, and for that reason that they never had come into existence and the certificate for them which had been issued by Adams to himself was issued without right.

The declaration of trust in question was originally made on January 1, 1895, to carry on a wholesale liquor business under the name of Adams, Taylor and Company.　It was to continue for five years, and the rights of those beneficially interested under it were divided into two thousand shares.　By an agreement dated January 1, 1900, the trust was extended for another five years, and the number of shares was made three thousand in place of two thousand.　Then comes the clause which gives rise to the question now before us and is in the following words:

" Second. That the principal trustee named in said declaration of trust be and hereby is authorized to issue to himself individually one thousand shares of the shares representing the capital of said company upon his paying to said Adams, Taylor & Co. one hundred dollars in cash for each and every share so issued." The testator Adams was at the time the principal trustee.

A set of books was kept in which appeared the business transactions of the trust, and the respective individual accounts of Adams, the plaintiff's testator, the defendant Barney, and one Taber, who, with Adams and Barney, made up all the holders of shares in the trust, and who under Adams conducted the business of the trust, Barney having charge of the office and Taber being employed outside the office in making sales. On December 31, 1899, the date of the expiration of the original trust, Adams owned one thousand three hundred, Barney five hundred, and Taber two hundred shares. . Barney's five hundred shares were pledged to Adams as security for Barney's note held by Adams, originally given in the sum of $50,000 for the purchase of five hundred shares.

On January 1, 1900, Adams charged to himself $100,000, and issued to himself a certificate for one thousand shares ; and afterwards on the same day he issued to the defendant Barney a certificate for two hundred and fifty shares, and to the defendant Taber a certificate for three hundred shares. The two hundred and fifty shares for which a certificate was issued to Barney were pledged to Adams to secure Barney's note in the sum of $25,000, given for the purchase of the two hundred and fifty shares; and two hundred of the three hundred shares issued to Taber were pledged by him to Adams as security for his note in the sum of $20,000, given for the purchase of two hundred of the three hundred shares, the other one hundred shares having been paid for by Taber from outside funds.

Both these notes were dated January 1, 1900, and in the agreements, also dated January 1, 1900, under which Barney's two hundred and fifty shares and Taber's two hundred shares were to be pledged to Adams, it is stated that these shares " have not been paid for." At that time the books had not been made up for the year 1899. When they were made up later, it appeared that Adams had to his credit in Adams,

Taylor and Company $67,978.27; Barney had to his credit $7,432.91, and Taber $10,490.95. Thereupon the following entries were made as of January 1, 1900 : The $67,978.27 to the credit of Adams was transferred to the credit of Adams, Taylor and Company ; Adams was credited with the $7,432.91, standing to the credit of Barney; he was also credited with $10,000 of the $10,490.95, standing to the credit of Taber, which sums were transferred to Adams by Barney and Taber ; and again he was credited with $600.36, which was charged to Barney, and which Barney had the right to draw from Adams, Taylor and Company under the agreement for his services; this $600.36 was the amount due on January 1, 1900, for interest on Barney's note originally given for $50,000, in payment of Barney's five hundred shares, which had been reduced by payments and on which the balance then due was $37,992.89. These three sums of $7,432.91, $10,000 and $600.36, after being carried to the credit of Adams, were transferred to the credit of Adams, Taylor and Company. In addition Adams borrowed of a bank on his individual note the sum of $13,988.46, and paid the same to Adams, Taylor and Company by his check on the bank of which it was borrowed. These five sums of $67,978.27, $7,432.91, $10,000, $600.36, and $13,988.46, made $100,000. It was found by the judge before whom the case was tried in the Superior Court " that it was understood between said Barney, said Taber and said Adams, that said one thousand shares should be paid for as above set forth," and " that said one thousand shares were paid for by said Adams, and that said certificate was legally and properly issued to him."

The presiding judge made a decree directing the defendant, upon the surrender to him of the certificates for the one thousand seven hundred and fifty shares held by his testator at the time of his death, to issue to the plaintiff as executor certificates for said one thousand seven hundred and fifty shares. From this decree the defendant took an appeal, and the case is here on that appeal and a report of the evidence which had been taken by a commissioner. At the hearing the presiding judge refused to make certain rulings ; but as no exceptions were taken to this refusal on his part, the question whether the rulings should have been given is not before us. The question

before us is whether on the evidence we find as he did for the plaintiff.

Aside from the rule that the finding of the judge who saw the witnesses is not to be set aside without cause, we are unhesitatingly in favor of the plaintiff. In our opinion the appeal is altogether without merit.

The defendant's first contention is that when Adams set off *pro tanto* against the $100,000 due from him to Adams, Taylor and Company, the sum of $67,978.27, due from Adams, Taylor and Company to him, and the two sums of $7,432.91, and $600.36, due to Barney from Adams, Taylor and Company, and the further sum of $10,000 due to Taber from Adams, Taylor and Company, which sums of $7,432.91, $600.36, and $10,000 had been transferred by Barney and Taber to Adams, he did not make a payment to that amount in cash. We are of opinion that he did.

Where A. owes B. and B. owes A., and the sums owed are absolutely and immediately due, and A. and B. account together and agree that each has paid the other, it is the same as if the sums due on each side had been handed to the other. To hold otherwise would be to allow form to prevail over substance. It is on this principle that practically all payments are made in the commercial world. We refer to payments made through the clearing-house; payments made through the clearing-house are made by setting credits against credits, but there can be no question of these transactions being payments and of their being payments in cash. If the maker of a check were sued on it and pleaded payment he could without question make out his defence by showing that the check had gone through the clearing-house. What is in law a payment is a payment in cash. On this ground it has been the established law of England for thirty years that a set-off of a debt absolutely due from a joint stock company to a subscriber to its shares, against the sum due from the subscriber to the company on his subscription, is a payment in cash for the shares within St. 30 & 31 Vict. c. 131, § 25, which provides that " Every share in any company shall be deemed and taken to have been issued and to be held subject to the payment of the whole amount thereof in cash." *Spargo's case*, L. R. 8 Ch. 407. *Pagin & Gill's case*, 6 Ch. D. 681, 685. *Andress' case*,

8 Ch. D. 126, 128. *White's case*, 12 Ch. D. 511, 515, 520. *Kent's case*, 39 Ch. D. 259, 263. *In re Gibson*, 5 L. R. (Ir.) 139, 153, 155. There is nothing in *Haggerty* v. *Foster*, 103 Mass. 17, and *Pierce* v. *Bryant*, 5 Allen, 91, to the contrary. If the transfer of a credit were held not to be a payment in cash, there would be no stopping place short of requiring in every instance that legal tender should be physically handed across the counter to make a cash payment. A check on a bank handed by the debtor to the creditor and deposited by the creditor in his bank would not be a cash payment; all that the depositor gets from his bank in such a case is a credit for the amount of the face of the check. In the case at bar this argument of the defendant goes to the $13,988.46 not being a payment in cash as well as to the credits due from Adams, Taylor and Company which were set off. It is out of the question to reach that conclusion on the one hand, and on the other hand the door is not open to a loose construction of what is in law cash by holding that when cash is honestly due from A. to B. and the same amount is due from B. to A., and A. and B. agree that each has paid the other, it is a payment in cash. The rule does not apply unless the sums are absolutely and immediately due — for example, it has been held under the joint stock companies act that where services had been rendered to the company and the company had agreed to take and had taken the services in payment for a subscription to its shares, the shares had not been paid for in cash because by the terms of the agreement no cash was ever due for the services. *White's case*, 12 Ch. D. 511. And so where a conveyance of property to the company was to be paid for in cash or in paid up shares, no cash being absolutely due in respect of the conveyance, the shares had not been paid for in cash; *Barrow's case*, 14 Ch. D. 432; and so where the debt due the company was due but not payable and no call had been made on the subscription, it was held that the setting off of one debt against the other was not a payment in cash. *Kent's case*, 39 Ch. D. 259.

The setting off of the four credits due from Adams, Taylor and Company of $67,978.27, $7,432.91, $600.36, and $10,000, — $86,011.54 of the $100,000 due Adams, Taylor and Company from the plaintiff's testator, — was a payment of $86,011.54 in cash.

The rest of the $100,000, to wit, $13,988.46, was paid in cash by a check drawn on the Metropolitan Bank. On March 31, 1900, when the $13,988.46 was paid, the one thousand shares were paid in cash if they were not paid for before. The only question here is whether they have been paid for. It is not necessary that the shares should have been paid for when the certificate was issued. It is enough for the purposes of this case that they have been paid for.

But it is plain, so far as the $86,011.54 paid by setting off credits is concerned, that the payment was made as of January 1, 1900, the date of the issue of the certificate. All these credits were due from Adams, Taylor and Company on January 1, 1900, when the certificate was issued, but the amount of them had not been ascertained at that time because the books had not been made up for the preceding year. When the books were subsequently made up and the amount of the credits ascertained, and when, upon Adams's return from Colorado, where he went on or about January 1, payment was made by setting credit against credit, the payment was a payment as of January 1, 1900, to Adams, Taylor and Company, who had had the money all the time; if at that time interest was paid on the balance of $13,988.46, the whole payment was made as of that date. Whether interest was paid on this sum of $13,988.46, is not altogether clear. The proceeds of the note were put to the credit of Adams, Taylor and Company in the bank which lent the money to Adams, and Adams's note is dated January 1, 1900. If no interest was paid to Adams, Taylor and Company on the $13,988.46 from January 1 to March 31, so that that payment stood as a payment of March 31 and not as a payment of January 1, the question arises whether the one hundred and thirty shares and a fraction paid for by this $13,988.46 should stand as paid for on March 31, or whether Barney and Taber are estopped to do anything more than claim interest on that sum from January 1 to March 31. That question is not before us. The only question before us is whether this $100,000 was paid by Adams at some time and paid in cash, and we are of opinion that it was.

Several objections remain to be dealt with.

The defendant objects that the payment of $13,988.46 is not

a payment in cash, because the note given by Adams when he borrowed this sum was eventually paid by a check of Adams, Taylor and Company. There is nothing in this objection; the money paid Adams, Taylor and Company was the money of the bank lent to Adams. The fact that when the note became due Adams had money to his credit in Adams, Taylor and Company, and used that money in paying the bank, is immaterial.

The defendant objects that the account of Adams in which he is charged with the $100,000 and credited with the five sums aggregating $100,000 is an open running account, and that unless the final entry to his credit of $39,756.61, being his share of the profits for that year, is taken into account, it was overdrawn. The account in question is an account in which is entered without discrimination the payments for these one thousand shares and the various current items, including what was drawn on account of profits to be ascertained at the end of the year. But he had a right to draw on his share of the profits before they were ascertained, and when they were ascertained they more than equalled his drawings on account of them; there was a balance in his favor on the whole account at the end of the year, amounting to $589.08. It is not necessary to go farther to dispose of this objection.

We are satisfied on the evidence that no unfair advantage over Barney and Taber was in fact taken by Adams in not charging off bad debts or otherwise.

The decree finally disposes of all questions raised by the pleadings, and should not have contained the provision giving "leave to the plaintiff to apply to the court for such further orders and decrees as may be necessary." The decree, omitting these words, must be

*Affirmed.*

*J. C. Ivy*, for the defendant.
*J. Lowell & J. A. Lowell*, for the plaintiff.