HARVEY-WATTS COMPANY & others *vs.* WORCESTER UMBRELLA COMPANY & others.

Worcester. October 2, 1906. — October 20, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Equity Pleading and Practice*, Appeal. *Corporation*, Statutory liability of officers and directors. *Payment*, In cash.

The rule that the decision of a single judge sitting in equity will not be reversed on appeal unless clearly erroneous is confined to cases where the evidence is given orally and there is a conflict in the testimony. Where the evidence is documentary the full court on appeal receives the case in regard to questions of fact and inferences of fact to be drawn from the evidence in the same way that the single judge received it.

Where the evidence in a suit in equity coming by appeal to this court consisted of an agreement in writing of counsel as to certain facts, the articles of incorporation and the by-laws of one of the defendants, interrogatories to two other defendants and their answers thereto, certain checks and other documents, and the oral testimony of one witness, it was *held*, that the questions of fact except so far as covered by the testimony of the one witness were presented to this court as fresh questions unaffected by the decree from which the appeal was taken.

In this Commonwealth, when, before the repeal of R. L. c. 110, § 44, a payment of the capital stock of a corporation could not be made by the conveyance of property except in conformity with the terms of that section, if the corporation agreed to buy property from a subscriber for its stock at a value equal to the amount of his subscription, and the subscriber borrowed this amount of money from a bank and paid it to the corporation for the shares for which he had subscribed, and the corporation gave him its check in payment for the property it had agreed to buy from him and he conveyed the property to the corporation and repaid the money he had borrowed from the bank with the check of the corporation, this transaction, even if both parties acted in good faith and the property was worth the full amount paid for it, was not a payment in cash for the capital stock of the corporation within the meaning of the statute.

In a suit in equity under R. L. c. 110, § 58, cl. 5, by creditors of a corporation to enforce the alleged liability of certain officers of the corporation for its debts on the ground that they had signed a certificate which was required by law knowing it to be false, if it appears that the defendants signed a certificate that certain shares issued by the corporation were paid for in cash, that the shares in fact were paid for by a conveyance of property to the corporation made in a manner which the defendants were advised by a member of the bar was in effect a payment in cash, and that they in good faith acted under his advice in receiving the payment as officers of the corporation and in signing the certificate, the plaintiffs have failed to show that the certificate was known to the defendants to be false and cannot recover against them.

In a suit in equity under R. L. c. 110, § 58, cl. 5, by creditors of a corporation to enforce the alleged liability of certain officers of the corporation for its debts on the ground that they had signed a certificate which was required by law knowing it to be false, where the defence is that the defendants in signing the certificate in question acted in good faith under the advice of counsel, if it appears that the member of the bar who advised the defendants was a subscriber for two shares of the stock of the corporation which he had paid for in cash, this fact is immaterial and in no way tends to show that the member of the bar was incapacitated from giving the advice in question.

In a suit in equity under R. L. c. 110, § 58, cl. 5, by creditors of a corporation to enforce the alleged liability of the general manager and the treasurer of the corporation for its debts on the ground that they had signed a false certificate that the capital stock of the corporation was paid in in cash and was invested in the purchase of material, supplies, machinery, stock and labor, knowing it to be false, it appeared that the defendants had signed a certificate to the effect alleged, and that ten shares of the corporation stated in the certificate to have been paid for in cash were paid for in the following manner: The defendant general manager had induced a certain person to subscribe for the ten shares by agreeing that he or the defendant treasurer would arrange it so that the payment for the shares could be made by the subscriber giving a note to the company for the amount. In pursuance of this agreement the subscriber borrowed $1,000 from a bank and gave it to the defendant general manager. On the next day the subscriber gave to the defendant general manager or the defendant treasurer his note for $1,000 payable to the corporation and received from the corporation $1,000, which he used in repaying the money borrowed by him from the bank. The subscriber's note was discounted by the corporation at the same bank to meet the check signed by the defendant treasurer which was used by the corporation in lending the subscriber the $1,000. No certificate for the shares was issued to the subscriber until his note to the corporation had been

paid in full two years after it was received. The certificate alleged to be false was signed by the defendants while the note of the subscriber was held by the corporation and was unpaid. *Held,* that the ten shares were not paid for in cash but by a note in violation of the provision of R. L. c. 110, § 44, and that the capital stock was not invested in material or the other things named in the certificate, as $1,000 of it was lent to the subscriber for the ten shares, and that both the defendant general manager and the defendant treasurer had knowledge of these facts when they signed the certificate in regard to the capital stock and were liable for the debts of the corporation under the terms of the statute.

In a suit in equity under R. L. c. 110, § 58, cl. 5, by creditors of a corporation to enforce the alleged liability of the general manager, the treasurer and the president of the corporation for its debts on the ground that they had signed a false certificate that the capital stock of the corporation was paid in in cash and was invested in the purchase of material, supplies, machinery, stock and labor, knowing it to be false, it appeared that the defendants had signed a certificate to the effect alleged and that ten shares of the capital stock had been paid for not in cash but by a note which remained unpaid for two years, and that the certificate was signed while the note was held by the corporation still unpaid so that the statements contained in the certificate were false, that the loan was made and the note was received in payment for the ten shares by the defendant general manager and the defendant treasurer without the knowledge of the defendant president, that the president was a director, that the by-laws of the corporation provided that no loan should be made without action by the directors, and that no vote of the directors authorizing the loan was put in evidence. *Held,* that it could not be assumed in the absence of evidence to that effect that the directors passed a vote authorizing the loan or that the defendant president acted recklessly in signing the certificate as to the capital stock; therefore that there was no evidence that when he signed the certificate he knew it to be false and he was not shown to be liable under the statute.

LORING, J.  This is a bill brought by creditors of the Worcester Umbrella Company, a Massachusetts corporation, to enforce the alleged liability of three of its officers under R. L. c. 110, § 58, cl. 5,* for signing a false certificate that the capital stock of the corporation was paid in in cash and invested, or voted to be invested, in the purchase of material, supplies, machinery, stock and labor.  The case comes before us on an appeal from a decree dismissing the bill.  The evidence at the hearing was taken by a commissioner, and special findings were made in the Superior Court.

It appears that a certificate of organization of the Umbrella Company was issued by the secretary of the Commonwealth on February 13, 1902.  Before the organization of the corporation

---

* See now St. 1903, c. 437, § 34.  The whole of R. L. c. 110 was repealed by St. 1903, c. 437, § 95, except so far as continued in accordance with § 96 of the same statute.

the defendant Jones had been carrying on the business of manufacturing umbrellas, under the name of the Jones Umbrella Company, and the defendant Howard, together with one Sisson, apparently had been carrying on practically the same business under the name of Howard and Sisson. For " some three or four months" before February 13, to use the words of the defendant Jones, the project of these two firms organizing a corporation to take their stock in trade had been under discussion; and as a result the corporation in question with a capital stock of $20,000 was organized. The defendant Howard was elected treasurer, Jones general manager, and Duncan (the executor of whose will is the other defendant) president, and they respectively held these offices until after the matters here complained of. They also were and continued to be directors. On February 28, (fifteen days after the organization was complete,) a meeting of the directors of the corporation took place, all the directors including Howard, Jones and Duncan being present. Whether these three were all the directors did not appear. It then was voted to buy " the stock of goods of the Jones Umbrella Co. owned by Joseph A. Jones," for $8,000; and " the same as to stock of the Worcester Umbrella Company, a copartnership consisting of A. H. Howard and W. B. Sisson, for the sum of $1,700. The above stated amounts are the same as originally agreed when making up the corporation of Worcester Umbrella Co. on February 13, 1902."

On the adjournment of that meeting Jones and Howard the treasurer went to the First National Bank of Worcester. Jones borrowed of the bank $8,000, receiving from the bank a check for $8,000 which he handed to Howard as treasurer. Thereupon Howard handed him the check of the corporation for a like amount in exchange for an assignment of his stock in trade. The $8,000 check of the corporation was paid by Jones to the bank in payment of the loan to him. At the same time Howard borrowed of the bank $1,700, delivered to himself as treasurer the check which he received for that loan, and received from himself as treasurer a check on the same bank for $1,700, in exchange for an assignment of the stock in trade owned by himself and Sisson, which check he paid to the bank in payment of the loan to himself.

It further appeared that the defendant Jones had induced one Conrad to subscribe to ten shares of the stock on the ground that he or Howard would arrange it so that the payment for them could be made by Conrad's giving a note to the company for the amount. In pursuance of this agreement Conrad, on the same February 28, borrowed $1,000 from the same First National Bank of Worcester and gave the check which he received for it to Jones; on the next day he gave Jones or Howard his note for $1,000, payable to the Umbrella Company on or before January 1, 1903, with interest at five per cent, and received from the company $1,000, which he used in paying the loan made to him by the bank. Conrad's note was discounted at the bank to meet the check used by the company in paying Conrad the $1,000 lent by it to him. It appeared that no certificate was issued to Conrad for his shares until his note to the corporation was paid in full, namely, on January 8, 1905.

On March 8, 1902, Duncan as president, Howard as treasurer, and Jones, being a majority of the directors, in compliance with R. L. c. 110, § 43, made oath to a certificate that " the whole amount of the capital stock of said corporation, namely, the sum of twenty thousand (20,000) dollars, has been paid in, in cash, and that the same has been invested, or voted by the corporation to be invested, as follows, viz.: In the purchase of material, supplies, machinery, stock and labor for the manufacture and sale of umbrellas," etc.

There is no evidence in the commissioner's report as to the value of the stock transferred to the corporation by Jones, or as to that transferred by Howard and Sisson.

The first defence set up by the defendants is that " When an appeal in equity from the decision of a single judge is heard by the whole court, on a report of all the evidence adduced at the original hearing, the decision of such judge, as to matters of fact, will not be reversed unless clearly erroneous," and they cite in support of this *Reed* v. *Reed*, 114 Mass. 372; *Montgomery* v. *Pickering*, 116 Mass. 227, 230; *Newton* v. *Baker*, 125 Mass. 30, 32, 33; *Brown* v. *Brown*, 174 Mass. 197, 198. That rule depends upon the fact that where the evidence is given orally and there is a conflict in the testimony, the judge who saw the witnesses has a better opportunity of deciding between them. *Loud* v. *Barnes*,

154 Mass. 344, 345. *Olivieri* v. *Atkinson*, 168 Mass. 28, 30. *Dickinson* v. *Todd*, 172 Mass. 183, 184. *Shapira* v. *D'Arcy*, 180 Mass. 377, 379. *Skehill* v. *Abbott*, 184 Mass. 145, 147. *Colbert* v. *Moore*, 185 Mass. 227, 228. It is to be confined to such cases, and does not apply to cases where the evidence is documentary and the appellate court stands where the judge who heard the case stood in respect to the inferences of fact to be drawn from the evidence. See in this connection *Chase* v. *Hubbard*, 153 Mass. 91; *Poland* v. *Beal*, 192 Mass. 559. In the case at bar, the evidence before the Superior Court introduced by the plaintiffs consisted of an agreement of counsel as to the indebtedness due to the plaintiffs, the written agreement of association of the Umbrella Company, interrogatories to the defendant Howard and his answers, interrogatories to the defendant Jones and his answers, the several checks, the deposition of Conrad, the by-laws of the Umbrella Company, and certified copies of the payment of the capital stock of two other corporations signed by Jones and Howard respectively, among other persons. The evidence introduced by the defendant consisted of the oral testimony of a member of the bar.

The questions of fact in the case at bar stand before this court on appeal as they stood before the judge of the Superior Court, except so far as they are covered by the oral testimony of the member of the bar, of which we shall speak hereafter.

The statements sworn to by the three officers of the Umbrella Company in the certificate of payment of the capital stock were not true in three particulars: (First) it was not true that the $8,000 subscribed by Jones and the $1,700 subscribed by Howard and Sisson were paid for in cash; (second) it was not true that the $1,000 subscribed by Conrad was paid in cash; and (third) it was not true that all the capital stock was invested or voted by the corporation to be invested "in the purchase of material, supplies, machinery, stock and labor for the manufacture and sale of umbrellas," etc., but to the amount of $1,000 the capital stock was then invested in a note of Conrad.

When we say that it is not true that Jones's subscription for eighty shares and Howard and Sisson's subscription for seventeen of the twenty subscribed for by them were not paid in cash, we do not forget what was decided in *Breck* v. *Barney*, 183 Mass.

133, namely, that if A. owes B. and B. owes A., and they meet and set one debt against the other, there is a payment by A. to B. and a payment by B. to A. Nor do we forget that under this principle it has been held in England under St. 30 & 31 Vict. c. 131, § 25, requiring that " every share in any company shall be deemed and taken to have been issued and to be held subject to the payment of the whole amount thereof in cash," there is a payment in cash in such a transaction as that now under consideration, if entered into in good faith. The cases to that effect in England are collected in *Breck* v. *Barney*, 183 Mass. 133, 136, 137. But the statute under which the Umbrella Company was organized is not like St. 30 & 31 Vict. c. 131. It is provided in R. L. c. 110, § 44, that if the capital is to be paid by a conveyance to the corporation of real or personal property, a statement must be filed with the secretary of the Commonwealth setting forth the property conveyed in such detail as is satisfactory to the commissioner of corporations and indorsed with a certificate signed by him that he is satisfied that the valuation put upon that property is a fair and reasonable one. Under a statute where there is no provision regulating the payment of shares by a conveyance of property the English rule cannot well be avoided. But where payment of capital stock by a conveyance of property is regulated as it is in R. L. c. 110, § 44, the provisions of the statute must be complied with. To undertake to carry such a payment through by passing checks, as in the case at bar, is an evasion of the requirements of the statute.

The defendants' next contention is that they acted under the advice of counsel in the payment of the capital stock and in swearing to this certificate. The testimony of the member of the bar is not explicit on this point. We adopt however the construction put upon it by the judge of the Superior Court, and interpret it to mean that he did advise them that in his opinion the shares subscribed for by Jones, Howard and Sisson had been paid for in cash. The plaintiffs have asked us to hold these defendants liable in spite of this advice. In making that contention they rely on *Commonwealth* v. *Bradford*, 9 Met. 268, and *Commonwealth* v. *Connelly*, 163 Mass. 539, 543, upon the testimony of both Howard and Jones in the bankruptcy court, (in which they said that $10,300 of the capital stock was paid for in

cash and the balance in goods at a valuation,) and upon a certificate signed by Howard as treasurer of the Howard Brothers Manufacturing Company and one signed by Duncan as president of the Duncan and Goodell Company, as to the payment of the capital stock in those corporations. In each of those two corporations the capital stock, or a part of it, was paid for by a conveyance of property. The statutory requirements as to payment of capital by a conveyance of property are stated in the certificates to have been complied with. But these defendants may have understood from counsel's advice that such a case could be dealt with in either way, and we are of opinion that in respect to those matters the plaintiffs have not proved that the certificate was known by the defendants to be false. The case comes within *International Paper Co.* v. *Gazette Co.* 182 Mass. 578. There is nothing in the plaintiffs' suggestion that the member of the bar was incapacitated from giving advice by the fact that he subscribed and paid in cash for two shares in the capital stock.

Conrad's stock was not paid for in cash. R. L. c. 110, § 44, provides that " no note or obligation given by a stockholder, whether secured by pledge or otherwise, shall be considered as payment of any part of the capital stock." There is no more a payment in cash where the corporation receives cash one day and lends the cash received to the stockholder the next day than where it receives a note originally in payment of a stock subscription.

The member of the bar testified that he knew nothing whatever about the note from Conrad until after it was given, that he never was asked and never advised any one in reference to taking that note. That defence therefore fails so far as the Conrad note was concerned.

Did Jones, Howard and Duncan have knowledge of the fact that the $1,000 paid in by Conrad had been returned to him by way of a loan?

Jones had knowledge of this. Both he and Conrad testified that he, Jones, made the promise that this should be done to induce him, Conrad, to subscribe to the stock; and that he, Jones, took part in carrying that promise into effect.

Howard knew this. In the first place, it was his duty under the by-laws to receive the note, and he in fact signed the check

for the money lent Conrad on the note. More than that, he testified to the whole arrangement in the bankruptcy proceedings, and admitted in this suit that the facts so testified to were true. It is not entirely clear that he was testifying to facts known by him before signing the certificate. But this testimony, taken in connection with the fact that he signed the check for the money lent Conrad, fixes knowledge on him. He knew also that the statement that the capital stock was, or was voted to be, invested in material, supplies, etc. was not true. He knew that as treasurer of the corporation he had given Conrad a check for $1,000 of the capital stock money lent by the corporation to Conrad. Counsel have attempted to escape from this by arguing that the investment of capital referred to in the certificate refers to February 28, when the payment of capital stock was made, and not to March 8, 1902, when the certificate was signed. That is not so.

So far as the defendants Jones and Howard are concerned the case comes within *Heard* v. *Pictorial Press*, 182 Mass. 530.

The plaintiffs however have failed to fix knowledge of the Conrad note upon Duncan. The only evidence tending to fix knowledge upon him is the fact that under the by-laws no loan can be made without action by the directors. The directors' vote for the purchase of stock in trade from Jones and Howard and Sisson was in evidence. No vote by the directors for this loan was put in evidence. We cannot assume that one was passed; and if Duncan was in fact ignorant of the loan made by Jones and Howard, he cannot be held on the ground that he acted recklessly in making the oath under the doctrine of *Nash* v. *Minnesota Title Ins. Co.* 163 Mass. 574. There is no evidence of that fact.

The entry must be

> *Decree affirmed as against the defendant trust company as it is the executor of the will of Duncan.*

> *Decree as against the defendants Jones and Howard reversed. Decree for the plaintiffs against those defendants.*

*W. R. Bigelow*, for the plaintiffs.

*E. H. Vaughan*, (*J. Clark, Jr. & H. F. Harris* with him,) for the defendants.