## Gochnauer, Appellant, v. Union Trust Company.

*Contract—Option to sell real estate—Deed—Escrow.*

Where an owner of a mill property gives an option to a promoter for the purchase of the same in consideration of stock of a company to be organized by the promoter, and as a part of the option agrees to sell, if he so desired, the grain and flour on hand to the new company, and thereafter the owner deposits his deed for the mill with a trust company, in escrow, to be delivered to the new corporation on receipt of the stock of the company, and about a month after the stock is delivered to him, he sells his grain to the new company, and receives cash therefor, he cannot in an action against the trust company complain that certain promises of the promoter to himself had not been carried out, and that the trust company, knowing this, had delivered the deed for stock which turned out to be worthless, where it appears that prior to the sale of the grain he knew that the promises had not been kept.

Argued Jan. 12, 1909. Appeal, No. 256, Jan. T., 1908, by plaintiff, from order of C. P. No. 2, Phila. Co., Sept. T., 1905, No. 1,725, refusing to take off nonsuit in case of George C. Gochnauer v. The Union Trust Company. Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit for breach of an agreement relating to the deposit of a deed in escrow. Before SULZBERGER, P. J.

At the trial it appeared that the plaintiff had deposited with the defendant in escrow a deed for a flour mill owned by himself. The consideration for the deed was stock in a corporation about to be organized. When the trust company received the stock for the plaintiff it was to deliver the deed to the new corporation. This arrangement was carried out and the plaintiff received his stock. About a month afterwards the plaintiff in pursuance of an arrangement which he had with the promoter of the new corporation made prior to the deposit of the deed in escrow, sold his stock of grain on hand to the new company, and received cash therefor. He complained that certain promises made to him by the

promoter had not been kept, and that the trust company had delivered the deed knowing of these promises and that they had not been kept. When the plaintiff was on the stand, his counsel made the following offer:

Mr. Schoch: I propose to show by the witness upon the stand that at the time of, and prior to, the signing of the agreement between Mr. Jackson and himself, there was an understanding with Mr. Jackson that of the two mortgages upon Mr. Gochnauer's property, one thereof for $4,000, afterwards reduced to $3,500, was to be paid by Mr. Jackson, for which Mr. Jackson was to receive preferred and common stock of the same company, to which the plaintiff was to be entitled, and that this was an inducing cause to this plaintiff to sign his agreement, and that this was one of the representations which induced him to sign the agreement.

Objected to by defendant on the ground that it is nothing to do with the case. Objection sustained. Exception to plaintiff. [5]

I propose to show by this witness that Mr. Locker, the then president of the Eastern Milling and Export Company, gave to the witness on the stand a statement of the assets and liabilities of the Eastern Milling and Export Company, dated as of December 31, 1901, and that following some correspondence with the plaintiff, Mr. Locker said that the $3,500 which should have been paid, in our view of the case, by Mr. Jackson on the plaintiff's property, was paid by the Union Trust Company out of the bond issue.

Objected to by defendant. Objection sustained. Exception to plaintiff. [6]

Mr. Schoch: I propose to prove by the witness on the stand that on May 15, 1901, at the time Mr. Henry C. Niles delivered to the witness the certificates of the stock in suit, he said to the witness that he was acting for the Union Trust Company and that he knew that the conditions of the witness's agreement with Mr. Jackson had been complied with, and also that it was upon this condition and upon this inducement that the witness transferred his receipt to Mr. Niles and took from him the two certificates of stock.

Objected to by defendant. Objection sustained. Exception to plaintiff. [7]

Mr. Schoch: I offer to prove by this witness on the stand that at the time he took his deed to the office of the Union Trust Company, together with the receipt which he had prepared, and met Mr. Harper there; that they had a conversation, wherein the so-called preferred stock clause of the Jackson agreement was discussed and its meaning and intent arrived at; that the conclusion on both sides was that the intent and meaning of that clause was that the properties were to be purchased solely with preferred stock; that nothing else was to be paid for the properties going into the consolidation; that the mortgage which was to be placed upon the combined working mills was to be for a sum approximating $800,000; that the proceeds thereof were solely to be used as working capital; that not one cent of it should be paid for profits, expense or anything of that nature; and that upon this understanding of that clause of the agreement, with Mr. Harper, the gentleman left his deed to be delivered when the Jackson agreement was carried out in accordance with its terms and with the understanding.

Objected to by defendant. Objection sustained. Exception to plaintiff. [8]

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was the order of the court refusing to take off nonsuit.

*R. W. Woods,* with him *L. M. Schoch,* for appellant.— Waiver is a question of fact for the jury: Collins v. Houston, 138 Pa. 481; Richardson v. Moyer, 155 Pa. 174; Chalfant v. Goldbeck, 173 Pa. 354.

The alleged waiver did not induce the breach complained of, and therefore could not act as an estoppel, if the same had been found by the jury: Waters v. Wolf, 2 Pa. Superior Ct. 200; Sensinger v. Boyer, 153 Pa. 628.

*James Collins Jones,* for appellee.

Opinion by Mr. Justice Brown, October 11, 1909:

On February 28, 1901, the appellant gave to Newton Jackson a written option to purchase his mill, situated in Cumberland county, subject to a mortgage of $3,500. Jackson was the promoter of an enterprise for the consolidation of a number of mills in eastern Pennsylvania. By the terms of the option the appellant agreed to execute a deed to him, or to a corporation to be designated by him, and to accept as payment for his property $10,500 in six per cent preferred stock of the Eastern Milling and Export Company, or such other company as might be organized by Jackson to acquire the said property, and, in addition, $10,500 in common stock of such company. The option provided that the deed should be deposited in escrow with the Union Trust Company of Philadelphia on or before March 15, 1901, and, upon Jackson's delivery to the appellant of the said preferred and common stock, the deed was to be recorded in the office for the recording of deeds at Carlisle and the mill was to become the property of Jackson or of some company to be designated by him. The option further provided that the preferred stock issued by the Eastern Milling and Export Company should be limited to such an amount as might be necessary to purchase milling properties; that no preferred stock should be issued for profit to any attorney, underwriter, promoter or trust company; that Jackson or the purchasing company should pay to the appellant cash for his stock of grain, flour and feed on hand at the time of the transfer, and that if Jackson should fail to comply with the terms and conditions of the option, as above set forth, on or before June 1, 1901, the said trust company was to return the deed to the appellant. He executed a deed for his property to one Murphy, a grantee substituted with his consent, and took it to the trust company, with a receipt for the same prepared by his attorney, setting forth certain terms and conditions in addition to those appearing in the option under which the deed was to be deposited in escrow. The president of the trust company refused to sign this receipt, but gave one in the following form:

"No.                                                    1901.

"Received of George C. Gochnauer, depositor, deed dated March 25th, 1901, from George C. Gochnauer and wife to Joseph C. Murphy for property situated in Monroe Township, Cumberland County, Pa., to be held in escrow under terms of agreement dated February 28th, 1901, between the depositor and Newton Jackson.

"THE UNION TRUST COMPANY."

Having been notified that the stock which he had agreed to take for his property was ready for him, the appellant accepted the same on May 15, 1901, and surrendered the receipt which had been given to him by the trust company. The enterprise which Jackson had undertaken to promote met the common fate of most of such ventures, and the appellant in time became dissatisfied with the stock which he had taken in exchange for his property. Having ultimately found it to be worthless, he brought this suit against the Union Trust Company to recover $10,500, the supposed cash value of the stock at the time he accepted it. His allegation is that his loss is due to the failure of the trust company to perform its duty to him. In support of his claim he insists that certain promises were made to him by Jackson as the inducements to him to give the option; that these promises were that there would be placed on the consolidated mills a mortgage securing bonds, the proceeds of which would be used solely for working capital; that whenever it might become necessary to furnish money to pay off the indebtedness on mills, Jackson and those interested with him would furnish the money and take preferred and common stock in place of the mill owners, that the scheme of consolidation might not be interfered with; that the deeds for all of the properties would be deposited in a trust company which would hold the same until Jackson and those interested with him would carry out their part of the plan, in which event the deeds would be delivered and recorded, but if the plan was not carried out, they would be returned to the owners; that the foregoing promises, which did not appear in the op-

tion, were made known to the president of the trust company at the time the deed was deposited with it in escrow, and he agreed, on behalf of the company, that they should be performed.

The appellant admits that when he took the deed to the trust company he had with him a receipt prepared by his attorney, which set forth terms and conditions in addition to those in the option, upon which the trust company was to accept the deed in escrow. These differed materially from those appearing in the option, and.the president of the trust company not only refused to sign the receipt, but declined to give one in any other form than the one which the appellant accepted. It recites that the deed would be held in escrow under the terms of the agreement with Jackson of February 28, 1901. By that agreement no duty was imposed upon the trust company in connection with the issuing of the stock of the Eastern Milling and Export Company, or to supervise in any manner the management of its finances. The duty of the trust company was to hand over the deed whenever the appellant received the stock which he had agreed to take for his property. There was no attempt to prove that the stock which was given to him had not been regularly issued, but, whether it had been or not, it was his duty to see that it had been so issued at the time he accepted it. His acceptance ended the escrow tested by the written option.

At a meeting of the stockholders of the Eastern Milling and Export Company held in July, 1901—early in July is the time fixed by the appellant—he heard from a written report read by C. L. Harper, a director of the company and the president of the Union Trust Company, the appellee, that the promises of Jackson, which had induced the execution of the option, had not been kept. The learned trial judge was of opinion that there was proof of a failure on the part of the appellee to keep its promise to have Jackson's agreements carried out, and that but for what the appellant did after he learned that this promise had not been kept, the question of the appellee's liability would be for the jury. We express

no opinion as to the sufficiency of any legal proof of any duty imposed upon the appellee to the appellant which it failed to perform, but are of one mind that, for the reason given for entering the nonsuit, it cannot be taken off. With full knowledge obtained by the appellant in the early part of July, 1901, that the appellee had not done what he alleges it had agreed to do as a protection to him, on the last day of that month he availed himself of one of the terms of the option, and, in doing so, affirmed the delivery of the deed to the Eastern Milling and Export Company and estopped himself from thereafter questioning the performance of any duty to him on the part of the appellee. Jackson or the milling company was to pay him the cost value for his stock of grain, flour and feed on hand at the time of the transfer. On July 31, 1901—nearly a month after he knew the matters of which he now complains—he sold, in accordance with the terms of his contract with Jackson, his stock of grain on hand to the milling company and received the money for it from the funds of that company. Instead of repudiating his contract with Jackson and insisting upon the return of his property or the payment of its value, he reaffirmed the agreement under which his deed had passed and tacitly approved all that had been done. He evidently thought that the combination of the mills would still prove to be a financial success, making his stock valuable, and when, two years later, bankruptcy overtook it and disappointment came to him, his loss resulted from the risk that he continued to take for a consideration paid to him after full knowledge of the facts which he now alleges give him a cause of action against the appellee. The law will not permit him thus to play fast and loose. Nothing in the excluded offers, if admitted, would change the situation. The assignments of error are overruled and the judgment is affirmed.