[Civ. No. 8604. First Appellate District, Division Two.—May 27, 1933.]

ADELE F. CHRISTY et al., Respondents, v. OAKLAND TITLE INSURANCE AND GUARANTY COMPANY, Appellant.

Robinson, Price & Macdonald, Harrison S. Robinson, Harry L. Price and R. W. Macdonald for Appellant.

True Van Sickle and James H. Boyer for Respondents.

DOOLING, J., *pro tem.*—This is an appeal by Oakland Title Insurance and Guaranty Company from an adverse judgment against it in an action brought by certain purchasers of interest or units in a common law or Massachusetts trust of which appellant was trustee. The basic facts giving rise to the litigation were substantially as follows:

On and prior to February 16, 1926, one V. O. Lawrence was the owner of a parcel of real property in the city of Oakland improved with a building used and rented for stores, and upon which there was an encumbrance in the form of a deed of trust to secure the payment of $25,000 due January 5, 1927. Lawrence desired to create a trust upon this property for the purpose of dividing the ownership thereof into one hundred units or interests each representing the beneficial ownership of a one-hundredth part of such property. To carry out this purpose on February 16, 1926, Lawrence conveyed the real property to appellant and concurrently with such conveyance appellant and Lawrence entered into a trust agreement by which appellant agreed to hold the title to the property in trust for the purposes in such agreement recited. Since this trust agreement was afterwards superseded by a second trust agreement executed by the same parties its provisions are not important to this

discussion. On the same date, February 16, 1926, Lawrence, Coast Packing Company and appellant joined in making application to the Commissioner of Corporations to sell and issue certificates of ownership in the property of the trust. In such application it was recited that Lawrence owned all of the stock of Coast Packing Company, a California corporation; that proceedings were pending to change the name of this corporation to Oakland Investment Company; that pending the completion of such proceedings Lawrence proposed to do business as an individual under the fictitious name of Oakland Investment Company; and that upon the change of name of Coast Packing Company to Oakland Investment Company Lawrence would transfer his interest in the matter of the trust to such corporation. On April 14, 1926, and while such application was pending, appellant and Lawrence entered into a new agreement of trust concerning the real property in question. By this agreement it was recited that the property had been conveyed to appellant by Lawrence for the purpose of dividing the ownership of the property into one hundred parts to be evidenced by certificates of ownership and it was agreed that appellant should issue such certificates of ownership "to such persons as shall be designated by the said V. O. Lawrence". The conditions of the trust, briefly recited, were: That appellant should have nothing to do with the collection of the rents from such property but that rents should be collected and current expenses paid by Oakland Investment Company; that the life of the trust should be five years, but not to exceed the lives of all of the original certificate holders; that at the termination of the trust appellant should convey the property to the certificate holders; that if at any time a *bona fide* purchaser should be found who would pay $60,000 net for the property appellant should convey it to such purchaser and distribute the purchase price to the certificate holders; that in the event it should become necessary to renew the $25,000 mortgage, or to borrow money, appellant was empowered to convey the property to a person designated by it in order to execute the necessary documents, title then to be reconveyed to appellant as trustee; and that appellant assumed no liability except for the due performance of its covenants and especially no lia-

bility for the performance of any obligation on the part of Lawrence or Oakland Investment Company.

Thereafter an amended application for a permit to sell certificates of interest in such property was filed with the Corporation Commissioner. In the amended application it was recited that by decree of court the name of Coast Packing Company had been changed to Oakland Investment Company; that the property had been transferred by Lawrence to appellant for the uses and purposes set forth in the trust agreement of April 14, 1926; that petitioners proposed to issue certificates of ownership representing one-hundredth interests in such property at $232.50 cash per interest; that certain named persons had subscribed for an aggregate of 18 interests and Lawrence had subscribed for 82; and that the purchase price of such interests had been arrived at by appraising the property at $48,250 and deducting therefrom the amount of the mortgage, $25,000, leaving a net value for the property of $23,250.

Between April 14, 1926, and the date of the filing of the amended application with the Corporation Commissioner the persons named in the amended application as subscribers had entered into escrow agreements, denominated "pre-organization subscriptions", under which they severally deposited with appellant as escrow-holder the purchase price of certificates aggregating 18 units or interests at $232.50 per unit. The conditions of these escrows will be hereinafter discussed. On June 18, 1926, the Corporation Commissioner issued a permit for the issuance of the securities and shortly thereafter certificates were issued by appellant for 82 interests to Lawrence and for a total of 18 interests to other persons named in the application. Lawrence thereafter sold certain of his interests to other persons to whom appellant issued new certificates. When the debt secured by the deed of trust fell due the property was sold under the deed of trust and the entire investment was thereby lost. Subsequently the respondents, as certificate holders, sued appellant for damages and recovered judgment against it. The plaintiffs fall into two groups: 1. Those who represent original subscribers; and 2. Those who represent transferees of interests originally issued to Lawrence.

As to the latter group of plaintiffs it is claimed in support of the judgment in their favor that the original

issue of certificates to Lawrence was void because in violation of the terms of the permit and hence the attempted issuance to them of certificates as transferees of Lawrence was likewise void. The basis of this claim is the following provision contained in the permit:

"To sell and issue to the persons named in its application an aggregate of not to exceed 100 certificates of ownership, at and for a price of $232.50 per certificate, cash, lawful money of the United States, for the uses and purposes recited in its application."

Admittedly Lawrence did not pay any money to appellant and respondents claim that since Lawrence did not pay "cash" for his certificates the provision of the permit in that regard was violated. Appellant replies to this that since Lawrence was the owner of all the property, and was entitled to receive from appellant the full purchase price received for all certificates less its charges and the selling costs, it would have been an idle act to require Lawrence to pay appellant cash for the sole purpose of having appellant pay the same cash back to Lawrence, citing: Civ. Code, sec. 3532; *Commercial Nat. Bank* v. *Roberts,* 49 Cal. App. 764 [194 Pac. 751]; *Witter* v. *Bank of Milpitas,* 204 Cal. 570, 580 [269 Pac. 614]; *Central Sav. Bank* v. *Lake,* 201 Cal. 438, 447 [257 Pac. 521]; *Portola Realty Co.* v. *Carlston,* 32 Cal. App. 282 [162 Pac. 899]; *Savings Bank of San Diego Co.* v. *Barrett,* 126 Cal. 413 [58 Pac. 914]; *Herman* v. *Hecht,* 116 Cal. 553 [48 Pac. 611]; *Breck* v. *Barney,* 183 Mass. 133 [66 N. E. 643]; *Rogers* v. *H. S. Kerbaugh, Inc.,* 190 N. Y. Supp. 245. Under these authorities we are satisfied that if, as appellant claims, it would have been appellant's duty to repay the money immediately to Lawrence the law would not require the idle act of Lawrence paying appellant cash which appellant would be required immediately to pay back. ■ Indeed, we do not understand that respondents dispute this. What they do dispute is appellant's claim that Lawrence was entitled to receive immediately the purchase price of the certificates from appellant. In this behalf respondents point to the following condition in the permit:

"That no assets shall be distributed to shareholders, nor dividends declared by said trustee or its successors out of the *corpus* of said trust fund nor out of any money or property of said applicant, except the net earnings of said

association, without first securing the consent of the Commissioner of Corporations in writing."

This, they assert, was an impounding clause which prohibited the appellant from turning over the proceeds from the sale of certificates to Lawrence without the consent of the Corporation Commissioner; and this provision was so construed by the trial court. Neither on its face, nor viewed in the light of the other evidence in the case, do we think that it can reasonably bear such a construction. In the first place by its plain terms it refers to payments of an entirely different character. Lawrence's right to receive the purchase price of the certificates was not as a "shareholder" nor was it paid to him as "dividends". It was the right of an owner selling an interest in his property to receive the price which had been agreed upon. The plain meaning of the language "no assets shall be distributed to shareholders" is that no assets shall be distributed to persons in the capacity of shareholders or because they are shareholders; and the equally plain meaning of the language "nor dividends declared" is the same, since a dividend is a payment to a shareholder of his proportionate interest in a fund which he has as a shareholder. In the second place the purchase price of the certificates was not an asset of the trust nor a part of the trust *corpus*. By the trust agreement itself the sole *corpus* of the trust was the described real property; from the amended application for a permit it appeared that the sole *corpus* of the trust was intended to be the real property; by the certificates issued in the form approved by the Corporation Commissioner it was recited that the trustee "holds the legal title to the herein described real property in trust" and that the "trustee holds —— interests or parts of the title to said property in trust for" the named certificate holder. Nowhere in the entire transaction is there anything to suggest that the purchase price should become a part of the *corpus* of the trust, nor any duty assumed by appellant to manage or handle the purchase price as trustee. Indeed it would be hard to conceive of an owner of property capitalized at $23,500 giving it to a trustee and then buying back 82/100ths of it at par for cash.

If this provision could be said to be ambiguous, however, we have the oral testimony of the deputy corporation com-

missioner who handled the matter that it was the intention in issuing the permit that Lawrence as owner of the property should receive the purchase price of the certificates and that the condition herein discussed was inserted to place the same restriction upon the distribution of the real property which was the *corpus* of the trust, or the proceeds of its sale should it be sold by the trustee, as was placed upon the distribution to shareholders of the capital of a corporation by sections 309 and 309½ of the Civil Code as they then read. We do not consider that the language of the condition is ambiguous, but if it were this evidence would be controlling, in the absence of contradiction, in arriving at its proper meaning.

The plaintiffs who belong to the group of original subscribers seek to support the judgment in their favor on the ground that the conditions of the escrow were not fulfilled. The preorganization subscriptions, which were all in identical form, recited among other things that: "Ownership certificates will be issued as and when the Commissioner of Corporations of the State of California shall issue his permit to the Oakland Investment Company authorizing it to sell and issue to subscriber a certificate evidencing ownership."

The money deposited was to be held in escrow "until the concurrence of the following:

"1. Depositing of similar subscriptions totaling one hundred per cent (100%) of the ownership of fee to said property with said Oakland Title and Guaranty Company.

"2. Granting of permit by the Commissioner of. Corporations authorizing issuance of certificates of ownership under said trust."

It is claimed that since the permit was issued to appellant, and not to Oakland Investment Company, to issue the certificates that condition 2 construed with the recital was not met. This seems frivolous, but even conceding it force the evidence shows that a copy of the permit was attached to each original certificate. Plaintiffs therefore had notice that the permit was issued to appellant. If they did not wish to accept the certificates under that condition then was the time to speak. They could not take the certificates and hold them to determine whether or not their investment was a good one, and then when the investment failed claim a breach of condition. By accepting the certifi-

cate with knowledge of the fact they must be held to have waived the performance of that particular condition. (*Gochnauer* v. *Union Trust Co.,* 225 Pa. 503 [74 Pac. 371]; *State* v. *Parker,* (S. D.) [241 N. W. 318, 320]; *Burnett* v. *Continental State Bank,* (Tex. Civ. App.) [191 S. W. 172, 174].)

■ Respondents likewise claim a failure of condition 1 because Lawrence did not deposit a subscription in writing for the 82 interests taken by him. The purpose of requiring the deposit of 100 per cent subscriptions in writing could only be to insure the subscription of 100 per cent in interests. Lawrence actually took the 82 interests concurrently with the issuance of certificates for the other 18 and certificates were issued to him therefor. Furthermore in the amended application filed with the Corporation Commissioner, which was verified by Lawrence, it was recited that Lawrence had subscribed in writing for 82 interests. This would have operated to estop Lawrence to refuse to take the 82 interests had he wished to do so. In addition to all this, condition 1 would seem to have been inserted for Lawrence's protection and not that of the subscribers, since the money was to be paid over to Lawrence in any event and was not made a part of the *corpus* of the trust. Under all the circumstances we believe that there was a substantial compliance with condition 1.

■ Respondents also complain that the preorganization subscriptions recited that Oakland Investment Company was the grantor while in fact the grantor was Lawrence. They do not explain how they could have been injured by this and there was evidence to show that, as Lawrence represented in the original application to the Corporation Commissioner, pending the change of name of Coast Packing Company, Lawrence was using the name Oakland Investment Company in his individual dealings with respect to the trust property. Since our law permits an individual to do business under a fictitious name there was nothing reprehensible in Lawrence doing so in this case.

■ Finally, respondents claim that the condition of the permit requiring the trust agreement to be recorded before the issuance of any certificates was violated. It is true that the original certificates bear date before the date of recordation of the trust agreement; but they bear on their face a notation of the book and page in which the trust

agreement is recorded, showing that they cannot have been issued until after its recordation.

Respondents made an unfortunate and, it would seem, ill-advised investment; but we can find nothing in the law or the evidence which would render appellant liable to them in damages.

The portion of the judgment herein appealed from is reversed with directions to the trial court to modify its findings in accordance with this opinion and enter judgment thereon in favor of appellant.

Spence, Acting P. J., and Sturtevant, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 25, 1933.