[Civ. No. 15177.   First Dist., Div. Two.   Feb. 10, 1953.]

HARRY GOTTESFELD, Appellant, v. RICHMAID ICE CREAM COMPANY (a Corporation), et al., Respondents.

Joseph A. Brown and Hutchinson & Quattrin for Appellant.

Neumiller, Ditz, Beardslee & Sheppard, Joseph W. Diehl, Leon E. Warmke and Malcolm A. MacKillop for Respondents.

DOOLING, J.—Plaintiff appeals from an order granting a motion for change of venue from the city and county of San Francisco to the county of San Joaquin. It is undisputed

that the defendant Montgomery is a resident of San Francisco and that all of the other defendants are residents of San Joaquin County. The question presented on this appeal therefore is whether on the showing made before the superior court that court was entitled to conclude that the defendant Montgomery "is improperly joined as a defendant, or has been made a defendant solely for the purpose of having the action tried in the . . . city and county . . . where he resides." (Code Civ. Proc., § 395.)

In determining this question there are certain settled rules which must be borne in mind. ▮ The question whether the resident defendant is improperly joined must be determined from an examination of the pleadings then before the court and "(i)f the allegations in question did no more than shadow forth the semblance of a cause of action they would be proof against assault upon the ground that they were sham and frivolous. . . . It is enough . . . upon the hearing and determination of the demand for a change of venue, that the cause of action purported to be stated against the . . . defendant was apparently pleaded in good faith and is not, *prima facie*, so glaringly and vitally defective as to be beyond correction by amendment." (*McClung* v. *Watt*, 190 Cal. 155, 160-161 [211 P: 17]; *Mills* v. *Brown*, 205 Cal. 38, 41 [269 P. 636]; *Freeman* v. *Dowling*, 219 Cal. 213, 216 [25 P.2d 980]; *Independent Iron Works, Inc.*, v. *American President Lines, Ltd.*, 35 Cal.2d 858, 860 [221 P.2d 939].)

▮ In determining the question whether the resident defendant has been joined solely for the purpose of having the action tried in the county of his residence "the real issue for determination by the trial court was whether plaintiff, in joining the resident defendant as a party, had reasonable grounds for the belief in good faith that the plaintiff had a cause of action against the resident defendant." (*California Collection Agency* v. *Fontana*, 61 Cal.App.2d 648, 653-654 [143 P.2d 507]; *White* v. *Kaiser-Frazer Corp.*, 100 Cal.App. 2d 754, 758 [224 P.2d 833]; *Freedman* v. *Imperial Cattle Co.*, 112 Cal.App.2d 593, 597 [246 P.2d 986].) ▮ It is also the rule "that upon the hearing of such motion, the court should not try, upon conflicting affidavits, the issues of fact going to the merits of the cause of action stated against the resident defendant." (*California Collection Agency* v. *Fontana, supra*, 61 Cal.App.2d p. 653; *White* v. *Kaiser-Frazer Corp., supra*, 100 Cal.App.2d 758; *Freedman* v. *Imperial Cattle Co., supra*, 112 Cal.App.2d p. 596.)

Upon the first question, while the complaint is decidedly a rambling document which does not state the theory of the pleader as to the cause of action asserted against the defendant Montgomery with the nicety or precision necessary to render it invulnerable to attack by demurrer we are nonetheless satisfied that it is sufficient to meet the test that it need do "no more than shadow forth the semblance of a cause of action," and "is not, *prima facie*, so glaringly and vitally defective as to be beyond correction by amendment."

The complaint is entitled: "Complaint—Declaratory Relief." It alleges: (Par. I) that Richmaid Ice Cream Company is a corporation with its principal place of business in Lodi, California and defendants Henry Hansen, Karen Hansen, Montgomery and Rosenvinge were during all the times mentioned and now are its directors; (Par. II) that Montgomery is a resident of San Francisco, is a stockholder and director of, and during some of the time was manager of, the corporate defendant; (Par. III) that plaintiff owns 1500 shares, approximately 10 per cent, of the total stock issued by said corporation; (Par. IV) that defendants Micke in December 1944 leased to the Hansens and Rosenvinge the site on which is located the building now occupied by the corporation; (Par. V) that by said lease the lessees were given an option to purchase the leased property at any time within 20 years for $37,500 and that on August 6, 1946 this lease was assigned to the corporation; (Par. VI) that the corporation has expended in excess of $35,000 in the improvement of said leased property and that said property is now of the value of approximately $100,000; that defendants Micke have entered into a conspiracy with the two defendants Hansen and defendants Rosenvinge and the corporation to fraudulently and without consideration cause to be executed an assignment by the corporation of its interest in said lease and option for the purpose of reducing the assets of the corporation so as to reduce the value of plaintiff's stock and thereby cheat and defraud plaintiff and irreparably damage him, and this conspiracy was actually carried out and completed as follows: (Par. VIII) that on May 4, 1948, at a meeting of the board of directors of defendant corporation upon motion of defendant Montgomery the following resolutions were adopted: 1. $65,828.34 carried on the books of the corporation as good will was written off and charged against paid in capital stock; 2. an indebtedness to defendant Henry Hansen of $34,384.03 was acknowledged and the execu-

tion of a promissory note of the corporation to Hansen in that amount authorized; 3. an indebtedness to defendants Henry and Karen Hansen, and Rosenvinge in the sum of $18,105.30 was acknowledged and the corporation authorized to execute three notes each for one-third of that amount to said three defendants; (Par. IX) that the purpose of writing off the good will was to fraudulently and wrongfully reduce the value of the assets of said corporation and of plaintiff's stock therein. That no money was in fact due any of said three defendants from the corporation and the issuance of said promissory notes to them was wrongful and fraudulent. (Par. XI) That on January 6, 1950, plaintiff addressed a letter to the corporation requesting that proof of the indebtedness of the corporation to defendants Henry Hansen, Karen Hansen and Rosenvinge be exhibited to him; (Par. XII) that on February 7, 1950, plaintiff addressed a letter to the corporation requesting that he be permitted to have a certified public accountant investigate the books and transactions of the corporation prior to the end of February 1950 and if that right was denied him he would take such legal steps as were necessary to protect his legal rights; that notwithstanding these demands the defendants refused to furnish detailed accounts of the corporation's business or to permit the plaintiff's accountant to examine its books; (Pars. XIII-XIV) that at a special meeting called for that purpose on September 28, 1950, and postponed to October 5, 1950, the lease on the property occupied by the corporation and the option to purchase it was transferred to Henry Hansen over the objection of plaintiff and defendant Montgomery. That the sole purpose of this transfer was to carry out the conspiracy alleged in Par. VI; (Par. XVIII) that "all of the aforementioned acts on the part of all of the defendants . . . were unjust, fraudulent, wrongful, and unlawful; that said acts . . . were committed by the defendants, and each of them, with the direct purpose to reduce and make worthless the capital stock owned by plaintiff . . ."; (Par. XX) that an actual controversy has arisen between plaintiff and defendants as follows; (Par. XXI) plaintiff contends (a) that the writing off of the goodwill was wrongful and fraudulent and for the purpose of reducing the value of the corporation's assets and the value of plaintiff's stock and was a fraud against plaintiff; (b) that the alleged indebtedness of $34,-384.03 for which the corporation delivered its promissory note to Henry Hansen was unjust, wrongful, fraudulent and

without consideration and said corporation did not owe to Henry Hansen said or any amount; (c) a similar statement with regard to the alleged indebtedness of $18,105.30; (d, e) the action in transferring the lease to Henry Hansen (which Montgomery protested); (f) that defendants have entered into a conspiracy to compel plaintiff to sell his stock at one-tenth of its value and have threatened to dissolve the corporation thereby making his stock valueless unless he does so; (g) that defendants have entered into a conspiracy by illegal force and threats to obtain plaintiff's stock at a fraction of its value; (Par. XIX) that defendants deny and dispute plaintiff's contentions. The prayer of the complaint is 1. that the sum $65,828.34 be restored as assets of the corporation; 2-3. that the alleged indebtednesses of $34,384.03 and $18,-105.30 be cancelled and declared void; 4. that the assignment of the lease and option be set aside; 5. for the cancellation of another agreement with Henry Hansen and damages against the Hansens and Rosenvinge for their wrongful conduct of the business; 6. that there is due plaintiff from the defendants corporation, the Hansens and Rosenvinge $50,000; 7. for the appointment of a receiver.

In thus summarizing the complaint we have disregarded certain allegations that have no reference to defendant Montgomery. It will be noted of this complaint that it does not charge that Montgomery is a member of the conspiracy alleged in Paragraph VI; that while it alleges that Montgomery moved the adoption of the resolutions referred to in Paragraph VIII it is not there alleged that Montgomery did not act in good faith in doing so and the minutes of that meeting attached to the complaint as an exhibit show that the resolutions were recommended by the corporation's auditor (not made a party defendant) and checks of Henry Hansen for his advances to the corporation were exhibited at the meeting; that while the complaint is captioned as one for declaratory relief the prayer asks only for remedial relief and asks for no relief against defendant Montgomery; and that it is expressly alleged that Montgomery protested the assignment of the lease and option to purchase to Hansen.

Opposed to this is the allegation in the form of the pleader's conclusion of law in Paragraph XVIII that all of the aforementioned acts on the part of all of the defendants were unjust, fraudulent, wrongful and unlawful and done with the direct purpose to make worthless the plaintiff's stock; and the statement of the disputes entitling plaintiff to de-

claratory relief in Paragraph XXI (f) and (g). It is clear that no cause of action is sufficiently stated against defendant Montgomery to withstand demurrer. ■ However the allegations of conclusions of law above referred to cannot be said not "to shadow forth the semblance of a cause of action" or to be "so glaringly and vitally defective as to be beyond correction by amendment." If facts were alleged to support the conclusions of law pleaded against Montgomery, showing that with knowledge of the falsity of claims against the corporation he moved and voted for the resolutions at the May 4 meeting, such conduct would constitute a legal wrong of which the corporation at least could complain.

Respondents argue that no proper demand was made upon the corporation or its directors so as to qualify plaintiff to bring a derivative action on its behalf. (Corp. Code, § 834.) ■ But the complaint alleges that the conduct complained of was the result of a conspiracy among a majority of the directors with others and it is settled corporation law that where a demand upon the directors for corporate action would be useless a stockholder may bring a derivative action without making such demand. (*Stoll* v. *Selander*, 81 Cal.App.2d 286, 293 [183 P.2d 935] ; 6A Cal.Jur., Corporations, secs. 458-459, pp. 811-813.) This rule of law was doubtless in the minds of the members of the Legislature when they included the words in section 834 (a) (2), Corporations Code "or the reasons for not making such effort."

■ However, on the question whether the plaintiff in joining the resident defendant had reasonable grounds for the belief in good faith that plaintiff had a cause of action against him "the mere fact that a complaint states facts sufficient to impose a joint and several liability upon all defendants including the resident defendant is not conclusive upon the hearing of a motion for change of venue. . . ." (*California Collection Agency* v. *Fontana, supra,* 61 Cal.App.2d p. 653, and cases there cited.) ■ This is a question for the trial court to determine from the face of the complaint and the affidavits submitted by the parties. The moving parties in their affidavit alleged that defendant Montgomery ceased to be a director of the corporation in November of 1948 and was not its manager after August 1, 1948. This was disputed in plaintiff's affidavit but the decision of that question was one of fact for the trial court. It was also asserted that the joinder of Montgomery was a sham, subterfuge and fraud on the court and that Montgomery is neither a necessary nor a

proper party but was joined for the sole purpose of having the action tried in San Francisco. The weaknesses and inconsistencies of plaintiff's complaint insofar as defendant Montgomery is concerned were pointed up. Plaintiff in his counteraffidavit stated no facts upon which he relied in joining Montgomery but contented himself with reasserting the conclusions of law pleaded in his complaint and asserting that defendant Montgomery "*wrongfully* introduced" the resolutions pleaded in the complaint, without the statement of any facts to support this conclusion of law. ▇ The word "wrongfully" without such supporting facts is surplusage and adds nothing to the statement. (21 Cal.Jur. 31-32.)

▇ In determining whether plaintiff did in good faith believe that a cause of action existed against Montgomery the court was entitled to consider the evasive character of the allegations of the complaint insofar as Montgomery is concerned, the fact that no relief was in fact prayed for against Montgomery, the fact that plaintiff singled Montgomery out of all of the defendants and inserted in his complaint an allegation of Montgomery's residence in San Francisco, the fact that Montgomery protested the action which is alleged as the culmination of the conspiracy among the other defendants, and the evasive character of plaintiff's counteraffidavit when the good faith of his joinder of Montgomery was called in question. ▇ Fraud or bad faith, like any other fact, may be inferred from circumstantial evidence. (*McNulty* v. *Copp*, 91 Cal.App.2d 484, 490 [205 P.2d 438].)

▇ On the whole case we are of the opinion that the trial court was justified in finding that even though the complaint may have shadowed forth the semblance of a cause of action against Montgomery the plaintiff did not in good faith believe that a cause of action existed against him but joined him as a defendant for the sole purpose of retaining jurisdiction in San Francisco.

The order is affirmed.

Nourse, P. J., and Goodell, J., concurred.