[L. A. No. 22561.   In Bank.   May 12, 1953.]

HOYT REED, Appellant, v. CARL O. NORMAN et al.,
Respondents.

18

Hy Schwartz for Appellant.

John Earl Haskins, in pro. per., and Alfred Jay Luke for Respondents.

GIBSON, C. J.—Hoyt Reed, a shareholder of Norman Decorating Co., Inc., brought this action to contest the validity of an election of corporate directors, to void shares of stock issued by the corporation to defendant Carl Norman, and to obtain an accounting of corporate funds. The trial court found and concluded that the shares were properly issued to Norman and that the election was valid. It also took an accounting and made certain findings with respect thereto. Judgment was entered accordingly, and Reed has taken this appeal.

The Norman Decorating Co., Inc., was organized in California in January, 1949, by Norman and two other men for the purpose of engaging in the paint contracting business. Sometime in March, 1949, Norman's associates withdrew, and Reed took their place. The offices of the corporation were located on the premises of Carl's Paint Store, a business which was separately owned by Norman. Reed worked in the field supervising painting jobs, and Norman worked in the office. Paints and materials used by the corporation were purchased from manufacturers and delivered by them directly to the jobs but were billed to the corporation through the paint store.

In April, 1949, the Norman Decorating Co., Inc., applied to the Commissioner of Corporations "for a permit to

issue 500 shares of stock to Norman and Reed, or to either of them, at $10 par value, for cash.'' Pursuant to the application a permit was granted for the issuance of the 500 shares ''for cash.'' In the following September 245 shares were issued to Reed and 255 to Norman. Reed paid $2,450 for his shares. Norman paid $1,500 cash, and the books show that the sum of $1,050 remaining due for the stock was charged against Norman's account. At that time the corporation was indebted to Carl's Paint Store which, as we have seen, was owned by Norman, in a sum in excess of the amount charged against his account.

Differences arose between the parties with respect to the manner in which the business was being conducted and the amount charged the corporation by Carl's Paint Store for materials. At a shareholders' meeting on April 27, 1950, when the question of electing a new board of directors arose, Reed challenged Norman's right to vote his 255 shares on the ground that they were void because not paid for with cash as required by the stock permit. Norman nevertheless voted all of his shares and elected a slate of directors which was composed of himself, Reed and one John Haskins.

The first question which must be determined is whether Norman paid cash for his shares in compliance with the terms of the permit. It is clear that he paid $1,500 cash for 150 of his shares. With respect to the remaining shares the books of the corporation show under the heading ''Capital Account,'' the following entry: ''8/31/49 1050. Journal Entry, charged to Norman's Advance account 'to set up liability for stock.' '' Under the heading ''Withdrawals Norman,'' the following entry appears: ''8/31/49 Advance (Journal Entry) $1050. (Liab. for stock).'' At the time the foregoing entries were made the books did not show any charges by Norman or Carl's Paint Store against the Norman Decorating Co., but there was evidence which supports a finding that the corporation then owed the store more than $1,050 for paints and materials. The trial court concluded that at the time the stock was issued to Norman he was entitled to $1,050 from the corporation and ''that by crediting the same amount to the Capital Stock Account that the corporation actually benefited in cash in the amount paid for said stock, towit, $1050.00.''

■ Section 26100 of the Corporations Code provides that securities issued in nonconformity with the terms of a stock

permit are void, and it is well settled that stock must be sold and disposed of in strict compliance with the provisions of the permit authorizing its issuance. (*Mannion* v. *Baldwin,* 217 Cal. 600, 603 [20 P.2d 678].) Shares have been held void for noncompliance with a cash requirement where they were, in fact, issued in exchange for real property (*Holmquist* v. *Kent,* 219 Cal. 231 [35 P.2d 977]; *People* v. *Stewart,* 115 Cal.App. 681 [2 P.2d 195]), for personal property (*Mannion* v. *Baldwin, supra,* [partnership interest]; *Herkner* v. *Rubin,* 126 Cal.App. 677 [14 P.2d 1043] [merchandise]), for promissory notes (see *Imperial Live Stock & Mtg. Co.* v. *Tracy,* 208 Cal. 205 [281 P. 50]; *Gridley* v. *Tilson,* 202 Cal. 748, 753 [262 P. 322]) or for personal services (see *Barton* v. *El Encanto Apartments, Inc.,* 216 Cal. 500, 502 [14 P.2d 501]). There was no evidence of an agreement that the sum of $1,050 due from Norman for the stock was to be applied in reduction of the amount owed him for merchandise, and the trial court did not so find. Nor did the court find that the books showed that the indebtedness to Norman for merchandise was reduced by the amount due from Norman for stock. It is not clear that the record in this case would support a finding that the shares in question were paid for by means of a cancellation of an indebtedness due Norman. But if we assume that the record supports such a finding, it is obvious that the transaction amounts to nothing more than an exchange of stock for merchandise. If the cancelling of debts were to be held the equivalent of cash, a corporation could circumvent the rule of the cases cited above by purchasing property or accepting services on credit and then issuing shares in satisfaction of the debt.

Cancellation of indebtedness is, of course, a proper form of consideration for stock (Corp. Code, § 1109(d)), and the Norman Decorating Co. might have obtained a permit authorizing it to issue shares in exchange therefor had it made an appropriate application to the Commissioner of Corporations. It chose, instead, to apply for a permit requiring cash, and if it subsequently desired to issue shares for any other kind of consideration it should have applied to the commissioner for an amendment of the existing permit. (See Corp. Code, §§ 25502, 25513, 26009.)

In seeking to excuse his failure to pay cash for his shares, Norman relies on the findings that at the time the shares were issued the corporation had advanced Reed the sum of $2,050 and that Norman was then entitled to withdraw

an equal amount. The fact, however, that Norman could have obtained advances in a sum equal to the amount which Reed had received, and thereby acquired money with which to pay cash for his stock, does not justify his failure to comply with the terms of the permit. ██ Similarly, the fact, as found by the trial court, that Norman had lent the credit of Carl's Paint Store to the corporation without receiving compensation therefor does not excuse his failure to pay cash for the stock. There is no evidence of any agreement that he was to be reimbursed in any amount for permitting the corporation to use the store's credit, and no valuation was placed upon its use. ██ Moreover, even if it be assumed that the corporation were indebted to him in some amount for that reason, cancellation of such a debt in exchange for the shares would amount to an exchange of stock for a consideration akin to services or intangible property and would be invalid under the principles discussed above.

*Christy* v. *Oakland Title I. & G. Co.*, 132 Cal.App. 315 [22 P.2d 737], upon which Norman relies, is clearly distinguishable. In that case the owner of a piece of real property conveyed it to a title company in trust and directed the trustee to issue and sell certificates of ownership in the property and pay the proceeds of the sales to him immediately. A permit to sell the certificates was granted by the Corporation Commissioner, which provided that the sales were to be for cash. The title company, as trustee, transferred several of the certificates to the trustor without requiring him to pay for them. The court held that this transaction did not violate the permit because it would have been an idle act for the trustor to pay the trustee money which the trustee would have been under an immediate duty to repay to him. This reasoning is not applicable to the facts of the present case. The proceeds of the sale of shares of stock belonged to the corporation, not to Norman. ██ Moreover, the fact that the corporation was indebted to Norman for paints and materials would not make payment by him of cash for his shares an idle or useless act. The purpose of selling the shares was to create a capital fund, not to pay the corporation's debts to him, and, as we have seen, excusing his failure to comply with the cash requirement of the permit would amount to approving an invalid exchange of stock for property or services.

██ Defendants cannot rely on claims of estoppel or laches inasmuch as they failed to plead facts giving rise to those

defenses, and there is nothing on the face of the complaint to indicate that any such facts existed. (See *Phoenix Mutual L. Ins. Co.* v. *Birkelund,* 29 Cal.2d 352, 363 [175 P.2d 5].)

■ It follows from the foregoing that 105 of Norman's shares were void for noncompliance with the cash requirement of the stock permit, that he was not entitled to vote them in electing his slate of directors on April 27, 1950, and that the election of directors was illegal.

Reed also challenges the correctness of certain findings relating to the accounting, but since our decision concerning the validity of stock issued to Norman affects the accounting, we need not pass on contentions made in connection with this phase of the case. It seems appropriate, however, to call attention to the fact that Reed's rights with respect to the accounting may be derivative in nature and that the record indicates that he has not met the requirements of section 834 of the Corporations Code. (See *Hogan* v. *Ingold,* 38 Cal.2d 802 [243 P.2d 1]; *Anderson* v. *Derrick,* 220 Cal. 770, 773-774 [32 P.2d 1078]; *Whitten* v. *Dabney,* 171 Cal. 621, 624 [154 P. 312]; *Shenberg* v. *DeGarmo,* 61 Cal.App.2d 326, 331 [143 P.2d 74]; note [1952] 40 Cal.L.Rev. 127.)

The judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.