[Civ. No. 21923. Second Dist., Div. Two. July 30, 1957.]

HOYT REED, Appellant, v. CARL O. NORMAN et al., Defendants; NORMAN DECORATING COMPANY (a Corporation) et al., Respondents.

Hy Schwartz for Appellant.

Raymond R. Roberts for Respondents.

MOORE, P. J.—Plaintiff appeals from the judgment of January 24, 1956, entered after an objection by defendants had been sustained to the introduction of any evidence, and from order taxing costs.

By his amended complaint of May 9, 1950, appellant alleged that in April 1949 application was made to the Corporation Department for the issuance of 500 shares of stock of respondent corporation (Norman Decorating Company) of the par value of $10 par for cash; that the permit authorized the issuance of such shares at par for cash without commission for the sale thereof; that the corporation issued to appellant 245 shares for which he paid the corporation $2,450 and he has continued to be owner and holder thereof; that Norman caused 255 shares of such stock to be issued to himself but that 150 shares were issued for $1,500 which Norman had borrowed from the National Paint Company; that respondent corporation issued its note for $1,500 to the National Paint Company and that such note was subsequently paid by the corporation but that appellant did not learn of such transactions until April 1950; that at the time of gaining such knowledge, appellant learned that an additional 105 shares of respondent corporation were issued to Norman; that he paid nothing therefor but caused an entry to be made on the books of the corporation showing $1,000 payment for the 105 shares and charged that sum as a corporate loan to Norman; that such facts did not become known to appellant until about April 1950.

In May 1950 appellant sued Norman for a judgment declaring the issuance of the 255 shares to be void. A judgment favorable to Norman was reversed by the Supreme Court which annulled, in effect, the issuance of 105 of the shares theretofore issued to Norman for the reason that the Corporation had not complied with the stock permit. (*Reed* v. *Norman*, 41 Cal.2d 17 [256 P.2d 930].)

In his amended complaint, appellant alleged that he and Carl O. Norman are directors and stockholders of respondent corporation; that one Harry Maslovitz is its secretary but owns no stock; that appellant has been a licensed painting contrac-

tor for many years and was superintendent in charge of painting for the corporation; that Norman has been acting director and president of the corporation and took full charge of said corporation, its finances, its accounts and is in complete charge and control and management of the corporation to the exclusion of appellant.

The pleading alleges that Norman has at various times declared that he was president and in full charge of the corporation and that it was no business of appellant how the books and funds were handled; that he, Norman, was boss and would do as he pleased in running corporate business and affairs.

That in January 1950 Norman refused to allow appellant to examine the corporation's books or to give financial statements as requested by appellant; that he withdrew from the corporation $110 as interest for the loan made by National Paint Company but did not pay such sum to National Paint Company, or return the $110 to the corporation; that as Carl's Paint Store, he withdrew, in 1949, in excess of $40,000 from the funds of the corporation, in large sums, and that in 1950 he withdrew from such corporate funds in excess of $50,000 without book entries or invoices; that Norman caused Carl's Paint Store to appropriate about $35,000 by having it charge lump sums to the corporation and that such charges exceeded the prices agreed to be paid by the corporation by about 40 per cent; that Norman appropriated large sums of money of the corporation by having it pay the following sums:

$2,000 for training a horse to be run in a race;
800 for advertising Carl's Paint Store;
2,100 for purchase of an automobile;
200 per month to Norman's daughter;
sums unknown to Mrs. Norman and Rose Norman
5,000 paid out that were not corporation liabilities.

Since its inception, the corporation performed $400,000 in painting contracts; that all payments for the work were handled by Norman, some of which were deposited to his own account.

Other misdeeds of Norman against the corporation and his usurpation of all power over the corporation are alleged along with other facts showing that Norman made use of the funds and powers of the corporation to its detriment.

In his prayer, appellant asked that the shares issued to

Norman be declared invalid; that he account to the corporation for all moneys paid out or received by Norman or Carl's Paint Store; that Norman be barred from holding office, in any capacity, in the corporation and that he be restrained from holding any meeting of its shareholders.

A preliminary injunction was issued upon the amended complaint on June 7, 1950, whereby the defendants were restrained from withdrawing any funds of the corporation from any source for payment or use of Norman or Carl's Paint Store or for any purpose other than in the regular course of business of the corporation; that no withdrawal or use of its funds be made except on the checks of the corporation executed by Carl O. Norman and Hoyt Reed; that no funds received by the corporation be banked to any account except that of the corporation at the Security-First National Bank at Burbank.

On May 31, 1951, appellant obtained leave to file his supplemental complaint and "to bring in Guy A. Ray and John E. Haskins new parties defendant"; it alleges that Haskins was secretary and director of the corporation after May 1950, and that Guy A. Ray is an accountant and since the last mentioned date has been acting as such for Carl O. Norman and has knowledge of the books and records of the corporation; that Norman made a claim of $5,000 against the corporation and has withdrawn large sums of money from the corporation, but he was entitled to none of them or to the $5,000; that Guy A. Ray made claim to $750, but the corporation was not indebted to him; that in order to circumvent the preliminary injunction, Norman and Ray schemed to assign the Norman claim of $5,000 to Ray; that upon such assigned claim and his own claim Ray sued the corporation and caused to be entered a default judgment, John E. Haskins appearing as Ray's attorney; that a levy was made upon the bank account of the corporation and the bank turned over to the sheriff the net sum of $4,506.57; that upon learning of such events, appellant moved to vacate the judgment and default and offered an answer to be filed, which motion was granted; that appellant demanded repayment of the sums such parties received from the sheriff but it has not been paid; that further to avoid the preliminary injunction of June 7, 1950, Norman caused the signatures for the withdrawal of funds from the Security Bank to be changed to Carl O. Norman and John E. Haskins; and that certain amounts have been

withdrawn by Norman. That since the filing of this action, Deane, Gunther and Shirley became indebted to the corporation in the sum of $11,500 for work done by the corporation; that Norman has demanded payment of that sum to himself; that when the debtor firm made its check to the corporation, Norman endorsed it to his own paint store and it was cleared, leaving the money in the possession of Norman.

Norman and Haskins both filed their answers in June 1951 denying the allegations of the supplemental complaint but laid claim to $5,000 Norman had allegedly paid to National Paint and Varnish Company for the use of the corporation and that by resolution of special meeting, June 22, 1950, Norman and Haskins were authorized to sign checks necessary for the ordinary conduct of the corporate business. The action was called for trial before Judge Barnes on June 21, 1951; the judgment is that which involved the legality of Norman's stock and was reversed May 12, 1953. (*Reed* v. *Norman, supra.*)

On December 8, 1953, the action was called for trial before Judge McKay and on January 11, 1954, an accounting was ordered to be made by the firm of Loomis McCallum & Company. The accountant's report was admitted into evidence October 15, 1954; but before findings and judgment could be made, the trial judge died. In the fall of 1955, the case was assigned to Judge McCoy for trial where, pursuant to objection, all evidence was excluded and judgment was rendered denying recovery against any defendant.

In his memorandum, Judge McCoy holds that the action is derivative and not brought by Reed to redress some grievance wholly personal to himself; that he was bound by the provisions of section 834 of the Corporations Code enacted in 1949; that in his motion to strike certain answers, Reed himself contended that this was a derivative action "justified by the stock holder's ultimate interest in the corporation"; that he made the same contention in demanding a new trial and in his argument in November 1955. The Supreme Court held the same by dictum when invalidating the issuance of the 105 shares. (*Reed* v. *Norman,* 41 Cal.2d 17 [256 P.2d 930].)

A derivative action is one in which the grievance to be redressed has been suffered primarily by the corporation and normally it should institute the action. But where it fails or refuses to act after demand, the stockholder's ultimate

interest in the corporation is sufficient to warrant the prosecution of a "propulsive" action ultimately to effect the recovery for the corporation of the rights or property of which it has been deprived by the wrongdoer. (*Klopstock* v. *Superior Court*, 17 Cal.2d 13, 16 [108 P.2d 906, 135 A.L.R. 318].)

Judgment for defendants having been ordered, appellant offered for filing his second amended complaint.

Now, the basis of the holding that the amended complaint does not state a cause of action is that the pleading does "not allege a demand upon the board of directors to act or their refusal to do so"; neither does it allege that appellant was a "registered stock holder" or that he informed the corporation or the board in writing of the ultimate facts of each cause of action or delivered to them a true copy of the complaint he proposes to file, and the reasons for his failure to obtain such action or the reasons for not making such effort. (Corp. Code, § 834.) ■ While it is the general rule that in a derivative action the plaintiff must plead a demand upon and refusal by the directors to act, it is equally well settled that such demand and refusal need not be alleged if the facts pleaded demonstrate such a demand would have been futile. (*Koshaba* v. *Koshaba*, 56 Cal.App.2d 302, 308 [132 P.2d 854].) Whether in his amended complaint appellant had made the requisite allegations for a derivative suit was not involved in the appeal which resulted in the cancellation of Norman's 105 shares of stock. (41 Cal.2d 17.) However, the allegations essential to the maintenance of a derivative action are substantially included in the amended complaint and the supplemental complaint. What they lacked in outright allegations of ultimate fact is supplied by the factual declarations in the pleadings. ■ Certainly, no demand is necessary when conspiracy, fraud or criminal conduct of the defendants is charged. (*Gottesfeld* v. *Richmaid Ice Cream Co.*, 115 Cal. App.2d 854 [252 P.2d 973].) The facts alleged are bristling with inferences that Norman and his associate were bent upon depriving appellant of his corporate rights. They paid moneys to parties not entitled to them; they made claims against the corporation which had no substantial basis. They were enjoined from withdrawing funds of the corporation and in order to circumvent the injunction they assigned claims to an employee and caused default judgments to be entered against the corporation. Also, they attempted to cause themselves to be elected directors without first having the necessary shares legally issued to them. When they appeared at

a shareholder's meeting in April, 1950, where appellant challenged Norman's right to vote the 255 shares on the ground that they were void because not paid for as required by the stock permit, Norman voted the shares and elected himself and associate as directors. Notwithstanding the Supreme Court's annulment of the shares (*Reed* v. *Norman,* 41 Cal.2d 17, 22 [256 P.2d 930]) thereafter he manipulated the corporation and its assets in utter disregard of appellant's rights and to his detriment, and that of the corporation.

From the facts alleged in the amended and supplemental complaints, it is inconceivable that any demand by appellant would have caused or inspired action by the corporation against Norman. He was entrenched behind barricades of his own construction. His was the sole voice in dominating the policy or any particular act of the corporation. Therefore, any demand made upon him would have been unavailing. (*Gottesfeld* v. *Richmaid Ice Cream Co., supra,* 860.) But matters of such grave import as those presented by the pleading should not be tossed aside at the suggestion of a violation of a rule of pleading. ▓ At every stage of an action, any defect of the pleadings which does not affect the substantial rights of the parties must be disregarded. (Code Civ. Proc., § 475.) ▓ Pleadings must be read as a whole and each part must be given the meaning it derives from the context. (*Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34, 42 [172 P.2d 867].) ▓ Allegations must be liberally construed with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Buxbom* v. *Smith,* 23 Cal.2d 535, 542 [145 P.2d 305].) ▓ If upon consideration of all the facts, plaintiff is entitled to any relief against the defendants, the complaint will be deemed sufficient even though the facts may not be clearly stated. (*Matteson* v. *Wagoner,* 147 Cal. 739, 742 [82 P. 436].) The basic principle of the code system in the administration of justice must not be embarrassed by technicalities. (*Buxbom* v. *Smith, supra.*)

The instant action was assigned to Judge McCoy for trial in November 1955. Some attempts to try the case occurred but to offers of proof by appellant, the court sustained an objection that the amended and supplemental pleadings do not state facts sufficient to constitute a cause of action. Thereupon, he filed his memorandum under date of January 4, 1956, whereby he held that by reason of the absence of allegations required by section 834 of the Corporations Code the plaintiff "has no right to maintain his action." Such order does not

comply with the usual practice or with the holdings of the Supreme Court. ■ A plaintiff who has pleaded the general set of facts upon which his cause of action is based should be given an opportunity to amend his complaint and should not be deprived of his right to maintain his action on the ground that his pleadings were defective for lack of particulars. (Code Civ. Proc., § 472c; *Olivera* v. *Grace*, 19 Cal.2d 570, 579 [122 P.2d 564, 140 A.L.R. 1328] ; *MacIsaac* v. *Pozzo*, 26 Cal.2d 809, 815 [161 P.2d 449] ; 140 A.L.R. 1328.) It cannot be denied that the amended and supplemental complaints constitute a dark record of high crimes and misdemeanors of respondent Norman to the detriment of the corporation. Is it possible that they should go unredressed and that injustice should endure because of a technical error of the draftsman of the pleading? The earnestness and sincerity of appellant's counsel and his client are recorded at every turn since the commencement of the action. They should not be thus summarily dismissed while still battling against declared injustices.

■ While the amended and supplemental complaints contain sufficient allegations of fact which show that it would have been futile for appellant to make any demand upon the corporation to attempt to recover the moneys appropriated by Norman to the detriment of the corporation, the proposed second amended complaint contains the allegations that on divers occasions in reply to appellant's demands Norman stated that "he would not comply with any demands or requests made by plaintiff . . . that it was none of plaintiff's business; that he Carl O. Norman, would do as he pleases . . . that it would have been a futile and useless act to make further demands, or give further notice to Carl O. Norman . . . that said Carl O. Norman would not have taken any steps, and would not have taken any action to redress the wrongs, and would not have complied with any notices or demands so to do." Also, the proposed second amended complaint alleges that Norman caused to be issued to himself 255 shares in September 1949. The declarations of such pleading were in compliance with section 834 of the Corporations Code and the trial court abused its discretion in denying appellant's offer to file the second amended complaint.

With reference to the apportionment of costs, the record is insufficient to present this question. Therefore, the appeal from the order regarding costs is dismissed.

The judgment is reversed with instructions to allow appellant to file his second amended complaint, if he be so advised.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied August 15, 1957, and respondents' petition for a hearing by the Supreme Court was denied September 25, 1957. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.