In re **FIRST CAPITAL HOLDINGS CORP., First Capital Life Insurance Group Inc., and Fidelity Bankers Life Insurance Group Inc., Debtors.**

**Bankruptcy No. LA 91–75518 SB.**

United States Bankruptcy Court,
C.D. California.

Sept. 18, 1992.

Lee H. Godfrey of Susman, Godfrey LPC, for creditors.

Jeffrey Krause of Stutman, Treister & Glatt, for debtor.

SAMUEL L. BUFFORD, Bankruptcy Judge.

## I. INTRODUCTION

The motion before the Court raises the issue of whether and under what circumstances a creditors' committee may prosecute claims on behalf of a chapter 11 debtor without first making a formal demand upon the debtor to prosecute the claims.

The Court holds that it has discretion to excuse the requirement of a demand upon a chapter 11 debtor as futile when the creditors' committee's complaint is brought against the debtor's present officers, directors, insiders, and principal shareholders.

## II. FACTS

Chapter 11 debtor First Capital Holdings Corp. ("First Capital") is a publicly held corporation. Its wholly owned subsidiaries First Capital Life Insurance Group Inc. and Fidelity Bankers Insurance Group Inc., which are also debtors in this administratively consolidated case, are the respective

owners of two insurance companies, First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company, which are the subjects of state insurance receivership proceedings. Shearson Lehman Brothers Holdings, Inc. ("Shearson") owns 28% of First Capital's common stock, which constitutes a controlling interest.

After a nationwide search for suitable litigation counsel, the committee (with Court approval) has retained as its special counsel Susman, Godfrey & McGowan (now Susman, Godfrey LPC), a Houston litigation firm with a national reputation for successfully pursuing large and complex business litigation. Susman Godfrey was employed to investigate and bring claims by the committee, on behalf of the debtors, against current and former directors and officers of First Capital and its subsidiaries and also against Shearson.

### III. ANALYSIS

The committee has filed a motion for leave to file a complaint, on behalf of the estate, against debtors' current and former officers and directors, and also against Shearson, to allege claims on the following theories: breach of fiduciary duty, waste of corporate assets, negligence and gross negligence, fraudulent conveyance and breach of contract.

The committee argues that it should be excused from making a demand on the debtor to bring the action here in question, and waiting for the debtor to respond, in the fear that the debtor may simply refuse to respond at all, and leave an uncertainty as to when the committee may have a right to bring a motion before the Court for leave to file its own action. Furthermore, the committee is anxious to proceed with its litigation so that it may be resolved in time to permit the debtor to proceed in a timely fashion with a plan of reorganization.[1] The committee further contends that there is no reasonable possibility that the debtors' officers and directors will initiate

or zealously prosecute a suit against themselves and the debtors' principal shareholder. The motion has been joined by creditors Mitsui Bank and Union Bank.

The debtors and Citibank contend that this litigation should be deferred in order to give the parties an opportunity to attempt to resolve these disputes in a plan of reorganization. They further argue that the committee has failed to show that the debtors have unjustifiably refused to bring suit.

■ A trustee, and a debtor in possession in a chapter 11 case, has the power to bring an action against a corporate debtor's principals for damages on behalf of the corporation for gross negligence, mismanagement or breach of fiduciary duty where such an action could have been asserted by the debtor corporation, or by its stockholders in a derivative action, prior to bankruptcy. *See, e.g., Louisiana World Exposition v. Federal Insurance Co.,* 858 F.2d 233, 246 (5th Cir.1988).

■ In appropriate circumstances a committee of unsecured creditors may be authorized to bring such an action instead of a debtor in a chapter 11 case. A committee may not bring such an action where the debtor has brought such an action itself. *See, e.g., Official Committee of Unsecured Creditors v. First Union National Bank (In re Florida Group, Inc.),* 123 B.R. 923, 924 (Bankr.M.D.Fla.1991); *Official Creditors' Committee v. Alloy Automotive Co. (In re Wesco Products Co.),* 22 B.R. 107, 109 (Bankr.N.D.Ill.1982). The issue before the Court is whether demand on the debtor to bring such an action is always a prerequisite to such an action by the creditors' committee.

### A. Bankruptcy law

The Bankruptcy Code gives a creditors' committee considerable power. Section 1103(c) provides:

A committee appointed under section 1102 of this title may—

---

1. The formulation of a plan of reorganization in this case also must presumably wait until the completion of the reorganizations of the two operating life insurance subsidiaries in conser-

vatorship in California and Virginia. However, these conservatorships are likely to be completed before the litigation at issue in this motion can be finished.

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title; and

(5) perform such other services as are in the interest of those represented.

11 U.S.C.A. § 1103(c) (West 1979 & Supp. 1992).

 A creditors' committee has a duty to take action when the debtor fails to take appropriate action for the benefit of the estate. Several alternative courses of action are open to a committee in such circumstances: it may bring a motion to replace the debtor in possession with a chapter 11 trustee, to convert the case to a case under chapter 7, to dismiss the chapter 11 case, or to compel the debtor-in-possession to act; in addition, it may seek court permission to institute an action itself on behalf of the estate. If the committee believes that the debtor has failed to fulfill its duty to prosecute actions, the committee has an obligation to bring this to the attention of the Court. This promotes the fair and orderly administration of the bankruptcy estate by providing judicial supervision over the litigation to be undertaken.

The creditors' committee in this case has chosen to seek Court approval to bring its own litigation on behalf of the estate to pursue the claims that it thinks should be brought. The committee now wants the Court to authorize its special counsel to litigate these claims.

 The Bankruptcy Code contains no explicit authority for a creditors' committee to initiate adversary proceedings. Case law establishes an implied right under § 1103(c)(5) for a committee to bring such an action in appropriate circumstances. *See, e.g., Unsecured Creditors' Committee v. Noyes (In re STN Enterprises)*, 779 F.2d 901, 904 (2d Cir.1985); 3 William L. Norton, Jr., *Bankruptcy Law & Practice* § 52.-11.50 (1991). Four requirements must be met before a committee may bring an action on behalf of the estate: (1) the claim be colorable; (2) the committee must make a demand on the debtor to bring the action; (3) the debtor must have refused unjustifiably to pursue the claim; (4) the committee must first obtain leave to sue from the bankruptcy court. *See, e.g., Louisiana World Exposition v. Federal Insurance Co.*, 858 F.2d 233, 247 (5th Cir.1988); *United Jersey Bank v. Morgan Guaranty Trust Co. (In re Prime Motor Inns, Inc.)*, 135 B.R. 917, 919 (Bankr.S.D.Fla.1992) (dictum).

The Court has found no authority to authorize excusing a creditors' committee from making demand on a debtor before bringing a cause of action belonging to the debtor. For guidance on this issue the Court looks to the law on futility of demand outside of bankruptcy, to see whether it should be applied in the bankruptcy context as well.

B. Shareholder Derivative Actions

 Shareholders have a right, outside of bankruptcy, to bring an action on behalf of a corporation, where the corporation does not bring the action on its own. A shareholder derivative suit is an action brought by one or more stockholders of a corporation to enforce a corporate right, or to prevent or remedy a wrong to the corporation, where the corporation fails or refuses to take appropriate action for its own protection. The injury alleged in such an action is to the corporation, and not to the plaintiff's individual interest as a stockholder. *Reed v. Norman*, 152 Cal.App.2d 892, 897, 314 P.2d 204 (1957).

 A shareholder may ordinarily bring a derivative action on behalf of a

corporation only after a demand has been made upon the board of directors to take action on behalf of the corporation. The shareholder must allege in the complaint with particularity the plaintiff's efforts to secure the desired action from the board of directors. This demand requirement mirrors that imposed on a creditors' committee in a chapter 11 bankruptcy case, and is likely the source of the chapter 11 rule.

Such a demand prior to filing a derivative action, and refusal by the board, is excused, however, if the facts pleaded demonstrate that such a demand would have been futile. No demand is necessary when the complaint charges specific instances of conspiracy, fraud, or criminal conduct of the directors or insiders of the corporation. Domination of the board of directors by a controlling stockholder may also excuse the demand requirement. *See, e.g.,* 1A Ballantine & Sterling, *California Corporation Laws* § 292.03 (4th ed. 1991).

Excuse from making such a demand is illustrated in the law of several states. Delaware Chancery Court Rule 23.1, for example, requires a plaintiff in a derivative suit to seek remedial action from the board of directors, unless such a demand for redress is excused. The rule requires a derivative action plaintiff to allege with particularity the efforts which were made to obtain such remedial action from the directors and why those efforts failed, or alternatively, why no such efforts were undertaken. Delaware Chancery Court Rule 23.1; Del.Ct.C.P.R. 23.1 (1991); David A. Drexler et al., *Delaware Corporation Law & Practice* § 42.03[2] (1992).

Similarly, in Nevada, where First Capital is incorporated, a derivative action plaintiff is required to allege with particularity the efforts made to obtain the desired remedial action from the board of directors, and the reasons for the failure to obtain such action or for not making the effort. Nev. R.Civ.P. 23.1 (1991).

The California Corporations Code provides:

No action may be instituted or maintained ... unless ... the plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such an effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file.

Cal.Corp.Code § 800 (West 1990). If proper demand is made and refused, the shareholder may be barred from suing derivatively if such refusal was made by the directors in the exercise of their sound business judgment. *See, e.g., Marsili v. Pacific Gas & Electric Co.,* 51 Cal.App.3d 313, 324, 124 Cal.Rptr. 313 (1975); *Findley v. Garrett,* 109 Cal.App.2d 166, 174, 240 P.2d 421 (1952).

California case law excuses such a demand if "the facts pleaded demonstrate such a demand would have been futile." *Eggers v. National Radio Co.,* 208 Cal. 308, 313–14, 281 P. 58 (1929); *Reed v. Norman,* 152 Cal.App.2d 892, 898, 314 P.2d 204 (1957). Such demand is futile where the board itself is alleged to have engaged in fraudulent or illegal conduct. In particular, it is settled California corporation law that, where the conduct complained of is the result of a conspiracy among a majority of directors of the corporation and others, a demand upon the directors is excused as futile. *Gottesfeld v. Richmaid Ice Cream Co.,* 115 Cal.App.2d 854, 860, 252 P.2d 973 (1953). Thus, where members of the board of directors have permitted or participated in alleged wrongdoing, or conspired with others, the requirement that a shareholder make a demand upon the board, in order to bring and maintain a derivative action, is excused as futile.

C. Application to Action by Creditors' Committee

The current motion by the creditors' committee for leave to file a complaint presents strikingly similar circumstances. Just as stockholders are the equitable own-

ers of a publicly held corporation, creditors are the presumptive owners of a debtor in bankruptcy. *Kham & Nate's Shoes No. 2, Inc. v. First Bank,* 908 F.2d 1351, 1360, 1362 (7th Cir.1990). This presumptive ownership status gives the creditors standing to assert a claim on behalf of the bankrupt debtor, in order to protect their interest in the estate.

The committee's complaint in this case alleges specific acts of wrongdoing by members of First Capital's board of directors and its principal shareholder, conspiracy among some of the directors and other named defendants, and domination of the board of directors by the principal shareholder. The committee argues that, given these allegations, it should be excused from demanding that the debtor assert these claims before filing them on behalf of the debtor.

■ Bankruptcy law has wisely adopted from corporate law the requirement that a demand be made on a corporation to pursue a cause of action before the owners may pursue it on behalf of the corporation. The Court holds that the exception to this demand requirement should also be adopted from corporate law, and that demand should be excused upon an adequate showing that such demand is futile. Thus a creditors' committee may be excused from making demand upon a debtor to pursue a cause of action on behalf of the estate where such a demand is futile.

■ The Court finds that, under the circumstances of this case, it has the discretion to excuse a demand upon First Capital's board of directors as futile and to authorize the creditors' committee to proceed to prosecute the claims against the officers, directors and controlling shareholder of the debtor.

### IV. CONCLUSION

The Court concludes that the creditors' committee is excused from making a demand on a debtor to pursue action against its officers, directors or controlling shareholders where such a demand would be futile. The Court further finds that this is

a case where it would be futile for the committee to make such a demand on the debtor to pursue the litigation that the committee has presented in its draft complaint, and that the Court in its discretion should permit the committee to file and to prosecute this action on behalf of the debtor.